UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | |
| THAYNE WHIPPLE, ) | CRIMINAL NO. 1:19-cr-00374 (RDM) |
| ) | |
| Defendant. ) | |
| _____ ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT WHIPPLE'S
MOTION FOR BILL OF PARTICULARS**

Despite a 138-paragraph indictment, which lays out the criminal activity of each defendant in great detail, and the production of more than 200,000 pages of documents in discovery—including all of the transcripts from grand jury testimony leading to the indictment—defendant Whipple claims to need additional information to understand the charges against him. The indictment, and the discovery, set forth Whipple's role in a conduit contribution conspiracy in detail. He does not need additional information, and instead seeks to use a bill of particulars for the prohibited purpose of extracting detailed written discovery from the government—all of which has already been provided. As such, Whipple's motion should be denied.

**I.   BACKGROUND**

**A.  The Indictment**

On November 7, 2019, a federal grand jury returned a 53-count indictment charging defendants Ahmad "Andy" Khawaja, George Nader, Roy Boulos, Rudy Dekermenjian, Mohammad "Moe" Diab, Rani El-Saadi, Stevan Hill, and Thayne Whipple with various offenses related to a scheme to unlawfully make millions of dollars in conduit contributions—contributions from one individual in the name of another—to various political committees throughout 2016,

2017, and 2018. Relevant to this motion, the indictment charges Whipple with four offenses: conspiracy to make conduit contributions, make excessive contributions, cause false statements, and cause false entries in records, in violation of 18 U.S.C. § 371 (count thirteen); making conduit contributions, in violation of 52 U.S.C. §§ 30122 and 30109(d)(1)(A)(i), and 18 U.S.C. § 2 (counts twenty and thirty); and obstruction, in violation of 18 U.S.C. § 1503 (count fifty-two). (Dkt. 1.)

The 64-page, 138-paragraph "speaking" indictment makes clear the scheme and Whipple's role in the scheme, as well as the criminal offenses he is charged with committing. In sum, he conspired with Khawaja and others to commit election crimes by willfully permitting his name to be used to funnel hundreds of thousands of dollars in excessive campaign contributions from Khawaja to various political committees in 2016 and 2017, and he lied to FBI agents about his criminal conduct in a recorded interview after being expressly warned that his statements would be transmitted to a federal grand jury. (Dkt. 1 ¶¶ 52-58, 71-72, 91-92, 135-36.)

**B. Discovery Produced to Date**

On December 19, 2019, the government produced approximately 216,000 pages of documents and audio recordings of each of the defendants' statements to the FBI. The government issued a second production of discovery on January 16, 2020, which included additional FBI records and a log, totaling approximately 21,000 entries, of Nader's WhatsApp communications with Khawaja and others.[1]

Whipple writes that "[m]uch of this discovery consists of bank records and does not provide any guidance as to how the alleged conspiracy was formed, or when Mr. Whipple, or the other defendants charged in count thirteen, joined the alleged conspiracy." (Dkt. 53-1 at 3). In fact, the production contains much more than bank records, and is well-organized to make it accessible

---

[1] For certain defendants, this production also included copies of their tax returns.

to defense counsel. Among other things, the government has produced the following categories of documents:

- Financial records, obtained pursuant to subpoenas, and sorted into individual subfolders that identify the financial institution that produced the records;
- Documents obtained from various individuals, including Whipple himself, and entities other than financial institutions, sorted into individual subfolders that identify the entity that produced the records;
- Nearly all of the FBI's investigative case file, including interview reports, agent handwritten notes, and an early production of *Jencks* material;
- Transcripts of all witness testimony before the grand jury; and
- All recordings of interviews between any defendant and FBI agents, including Whipple's recorded interview.

To assist defense counsel in making the discovery review more manageable, the government has produced its discovery with bates-stamping, in an organized and navigable digital format: specifically, sorted into folders that group documents by source, with file names that allow cross-referencing to the FBI file. The government has also provided early disclosure of exculpatory evidence pursuant to *Brady v. Maryland,* 373 U.S. 83 (1963), impeachment evidence pursuant to *Giglio v. United States,* 405 U.S. 150 (1972), and witnesses' statements pursuant to the Jencks Act, 18 U.S.C. § 3500.

Finally, when the government produced its initial discovery, it offered to meet with counsel for Whipple, to discuss key pieces of evidence and answer any questions about the government's case. The government extended this offer again during the week before Whipple filed the instant motion, but counsel preferred to file the instant motion and then update the court if any of their

requests were resolved before the government's response. The government remains willing to answer counsel's questions and to direct counsel to the relevant discovery where possible. As noted below, all the information Whipple seeks is contained in the indictment itself and the discovery that has been produced.

## II. Argument

Whipple seeks additional information about nearly every aspect of the government's case. Although his motion lists eighteen requests for more information, many of his requests are duplicative or overlap. There are, in reality, seven distinct areas of inquiry: (1) the identity of all members of the conspiracy charged in count thirteen (Dkt. 53 ¶¶ 1, 4); (2) the formation of that conspiracy (Dkt. 53 ¶¶ 3, 5-10); (3) the gap in time between the formation of that conspiracy and the first overt act alleged (Dkt. 53 ¶ 2); (4) proof that the overt acts connected to Whipple in count thirteen, which also form the basis of counts twenty and thirty, were not political contributions made with his own money (Dkt. 53 ¶¶ 11-12); (5) proof that the October 13, 2017, check from Khawaja was not for work performed by Whipple, but to reimburse Whipple (Dkt. 53 ¶¶ 13, 16); (6) proof that Whipple acted willfully in making these contributions (Dkt. 53 ¶¶ 14-15); and (7) proof of *mens rea* as to count fifty-two (Dkt. 53 ¶¶ 17-18).

Here, the government crafted a lengthy indictment, setting forth the details of Whipple's criminal conduct, explicitly addressing many of the defendant's requests above. Furthermore, immediately following the initial appearance, the government produced volumes of organized discovery, which includes the evidence supporting the charges. In short, Whipple already has all the information that he now requests. Whipple has more than enough information—and, indeed, more information than that to which he is entitled—to understand the charges against him, and his motion should be denied.

### A. Legal Standard

"A bill of particulars can be used to ensure that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges." *United States v. Concord Mgmt. & Consulting LLC*, 385 F. Supp. 3d 69, 73 (D.D.C. May 24, 2019) (*quoting United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987)). "Yet if the indictment is sufficiently specific, or if the requested information is available in some other form, then a bill of particulars is not required." *Butler*, 822 F.2d at 1193; *see also Concord Mgmt.*, 385 F. Supp. 3d at 73; *United States v. Sanford Ltd.*, 841 F. Supp. 2d 309, 315-16 (D.D.C. 2012); *United States v. Bourdet*, 477 F. Supp. 2d 164, 184 (D.D.C. 2007).

"A bill of particulars properly includes clarification of the indictment, not the government's proof of its case." *United States v. Lorenzana-Cordon*, 130 F. Supp. 3d 172, 174 (D.D.C. 2015) (internal quotations omitted). "A defendant may not use a bill of particulars as a discovery tool or a devise [*sic*] for allowing the defense to preview the government's theories or evidence." *United States v. Sang Han*, 280 F. Supp. 3d 144, 149 (D.D.C. 2017) (internal quotations omitted); *Concord Mgmt.*, 385 F. Supp. 3d at 74 ("[A] bill of particulars is inappropriate if by reasonable investigation in the light of information contained in the indictment, or otherwise furnished by the prosecution, the defendant could avoid prejudicial[ ] surprise[ ].") (internal quotations and citation omitted). As one district court succinctly stated:

> The bill of particulars is not intended to give a defendant the benefits of the government's investigative efforts. Nor may it be used to compel disclosure of the government's legal theory prior to trial. A defendant is only entitled to know those central facts which will enable him to conduct his own investigation of the transactions that resulted in the charges against him. Moreover, *a defendant is not entitled to compel the government to describe in detail the manner in which the crime was committed, thereby forcing the prosecution to fix irrevocably the perimeters of its case in advance of trial*.

*United States v. Stroop*, 121 F.R.D. 269, 272 (E.D.N.C. 1988) (emphasis added; citations omitted). A bill of particulars should be denied where the requested information has been provided to the defendant through other sources such as discovery. *See Butler*, 822 F.2d at 1193 (noting that "if the requested information is available in some other form [apart from the indictment], then a bill of particulars is not required."); *United States v. Mejia,* 448 F.3d 436, 445-46 (D.C. Cir. 2006) (bill of particulars unwarranted where defendant sought information about cooperating witness that was contained in law enforcement reports).

### B. Whipple's Request for Co-Conspirator Identities

Whipple seeks the identity of all co-conspirators. (Dkt. 53 ¶¶ 1, 4.) The indictment identifies only one unnamed co-conspirator—Co-Conspirator A—who is alleged to have paid a $133,000 check to Political Committee 2 with monies funneled to him by Khawaja. (Dkt. 1 ¶ 58(d).) Co-Conspirator A is clearly identified in the grand jury transcript of Special Agent Michael Evans, which has been produced in discovery. To the extent that Whipple needs additional clarification, the government will be happy to provide it. Nader, who attended the Las Vegas event with Whipple and others, is also an unindicted co-conspirator in count thirteen. (Dkt. 1 ¶ 58(k).) Beyond those two individuals, each overt act in count thirteen alleges conduct committed by one or more of the defendants named in that count. (*See* Dkt. 1 ¶¶ 58(a)-58(t).) The government continues to investigate this matter and will make all appropriate disclosures if it acquires evidence revealing additional, unindicted co-conspirators.

Despite the government's willingness to provide this information, it is worth noting that Whipple is not entitled to a bill of particulars on this point at all. "[A] bill of particulars is rarely the proper vehicle for obtaining the identities of unindicted co-conspirators." *Concord Mgmt.*, 385 F. Supp. 3d. at 75. This is because a request for such identities "amounts to a plea for discovery

outside the carefully crafted discovery rules . . . with the added tactical benefit of committing the government to specific factual positions before it has developed its case-in-chief." *Id.* The cases Whipple cites, for exceptions to this general rule, do not apply here. *Cf. United States v. Bazezew*, 783 F. Supp 2d 160, 168-69 (D.D.C. 2011) (ordering disclosure of co-conspirator identities where indictment provided scant information about actions of defendants who remained in the case); *United States v. Hsia*, 24 F. Supp. 2d 14, 31 (D.D.C. 1998) (ordering disclosure of co-conspirator identities where indictment alleged multiple overt acts committed by unnamed co-conspirators).

### C. Whipple's Requests for Information about Formation of the Conspiracy

Next, Whipple seeks additional information about the formation of the conspiracy. (Dkt. 53 ¶¶ 3, 5-10; Dkt. 53-1 at 5.) He asserts, incorrectly, that "[c]ount [t]hirteen does not allege any sort of agreement between any of the charged defendants" (Dkt. 53-1 at 5), but it does, in charging that they "knowingly conspired together." (Dkt. 1 ¶ 53). Whipple likely means, instead, that the indictment does not detail a particular meeting, or series of meetings, in which the conspiracy was formed. But this is not a deficiency and does not entitle him to a bill of particulars.

"At the outset, 'the general rule in conspiracy cases is that the defendant is not entitled to obtain detailed information about the conspiracy in a bill of particulars.'" *Sanford*, 841 F. Supp. 2d at 317. The indictment is not required to state specific times and places at which a defendant entered or exited the conspiracy, nor is such information generally the proper subject of a bill of particulars. *Butler*, 822 F.2d at 1193-94.[2] Here, the indictment sets forth specific dates on which Whipple and others participated in overt acts in furtherance of the conspiracy; this is enough to provide him with notice of the charges against him. *Id.* at 1193; *cf. Hsia*, 24 F. Supp. 2d at 31 (bill

---

[2] Indeed, although Whipple cites *Butler* in support of his argument, *Butler* involved the denial of a motion for a bill of particulars. The District of Columbia Circuit upheld that denial on appeal. 822 F.2d at 1194.

of particulars ordered where indictment failed to allege which co-conspirator performed which overt act).

Contrary to Whipple's suggestion (Dkt. 53-1 at 5-8), it is unnecessary to allege precisely how the conspiracy began, or how each individual defendant joined it. "The essence of a conspiracy is the existence of the conspiracy agreement, not the identity of those who agree." *United States v. Ríos-Ortiz*, 708 F.3d 310, 316 (1st Cir. 2013) (internal citations and quotations omitted). "In order to prove that an agreement existed, the government need only show that the conspirators agreed on the essential nature of the plan, not that they agreed on the details of their criminal scheme." *United States v. Gatling*, 96 F.3d 1511, 1518 (D.C. Cir. 1996) (internal citations and quotation marks omitted). Furthermore, the "agreement" can be inferred from circumstantial evidence. *Id.* The evidence of interdependence between conspirators need only be minimal. *Id.* at 1522 (citing *United States v. Daily*, 921 F.2d 994, 1008 (10th Cir. 1990)) ("Generally, it is sufficient for purposes of a single-conspiracy finding that a conspirator knowingly participated with a core conspirator in achieving a common objective with knowledge of the larger venture."). Indeed, in some conspiracies, it is common for all members to be connected by a central, leading figure. *See, e.g.*, *United States v. Slaughter*, 128 F.3d 623, 630 (8th Cir. 1997) (describing "hub and spokes" drug conspiracy).

Whipple's reliance on *United States v. Bazezew*, 783 F. Supp 2d 160 (D.D.C. 2011), is misplaced. In *Bazezew*, the indictment did not fulsomely describe how the conspirators acted in concert or took other actions to advance the goals of the conspiracy. *Id.* In that context, the court ordered additional disclosures. *Id.* at 168-69. The indictment here sets forth twenty subparagraphs detailing the actions and interactions of the co-conspirators, including Whipple. There is no absence of information like that in *Bazezew*. Moreover, extensive additional detailed evidence of

the conspiracy and Whipple's role has been provided in discovery. A bill of particulars is not warranted on these grounds.

### D. Whipple's Requests for Information About the Period from March through July 2016

Whipple also seeks information about the gap in time between the March 2016 formation of the conspiracy and the first alleged overt act, which took place on August 1, 2016. (Dkt. 1 ¶¶ 53, 58(b); Dkt. 53 ¶ 2; Dkt. 53-1 at 5-6.) The conspiracy in count thirteen began in March because it relates to the conspiracy charged in count one. The government's evidence shows that Nader was the source of the funds which Khawaja contributed, through defendant Whipple and others, in order to host the October 2016 event in Las Vegas. Thus, many of the overt acts alleged in the count one conspiracy also furthered the conspiracy in count thirteen.

Additionally, Whipple engaged in conduit contributions for Khawaja in May 2016. On May 3, 2016, Khawaja sent an email requesting that Whipple and another person make contributions to help him meet a fundraising requirement for attendance at a May 5, 2016, event with Candidate 1. Whipple made the requested contribution, then reported back to Khawaja. Bank records reveal that Khawaja reimbursed Whipple for this contribution. The government has produced in discovery bank records which reflect that contribution and reimbursement and emails about these transactions. Whipple's contribution is reported in data maintained by the Federal Election Commission ("FEC") and made available to the public (www.fec.gov/data/receipts/individual-contributions).

Beyond this, Whipple is not entitled to a bill of particulars on this point. "The government need not identify all overt acts in furtherance of a conspiracy in the indictment," *Hsia*, 24 F. Supp. 2d at 27, and "need not provide details, including time, place and date, of all overt acts in furtherance of the alleged conspiracy which the government intends to prove at trial." *Id.* at 31.

The indictment and discovery detail conduct during this time period, and additional information is not required.

### E. Whipple's Other Claims

Though they focus on different counts, Whipple's remaining claims are similar. He seeks additional information showing that his political contributions were not made with his own money; that Khawaja's October 13, 2017, check was a reimbursement for his contributions; that he acted willfully in making these contributions; and that he acted with *mens rea* when lying to the FBI. (Dkt. 53 ¶¶ 11-18). These requests clearly run afoul of the governing standard, that "a bill of particulars is not a discovery tool or device for allowing the defense to preview the government's evidence." *United States v. Brodie*, 326 F. Supp. 2d 83, 91 (D.D.C. 2004); *see also Sang Han*, 280 F. Supp. 3d at 149 ("[a] bill of particulars is meant to allow a defendant to properly prepare for trial, not provide a method to force the prosecution to connect every dot in its case.").

As demonstrated below, counts twenty, thirty, and fifty-two are sufficiently pled and inform Whipple of the charges against him. "If . . . the indictment adequately details the charges, or the information requested is otherwise available, then no bill of particulars is required." *United States v. Esquivel*, 755 F. Supp. 434, 436 (D.D.C. 1990). "An indictment is sufficient if it . . . contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend . . . ." *Hamling v. United States*, 418 U.S. 87, 117 (1974). Beyond the pleading of each count, the balance of the indictment and the government's discovery provides the information necessary for Whipple to prepare a defense.

#### 1. Count Twenty

Count twenty adequately informs Whipple of the charges against him. It correctly states the elements of the offense, which are: (1) making a contribution in the name of another, or

permitting one's name to be used to effect such contribution; (2) that the contribution aggregates $25,000 or more during a calendar year; and (3) willfulness. 52 U.S.C. §§ 30109(d)(1)(A), 30122; 18 U.S.C. § 2. It alleges the time period at issue, and the entity receiving the contributions. (Dkt. 1 ¶ 72.) The balance of the indictment makes clear that Whipple permitted Khawaja to use his name to effect these contributions (Dkt. 1 ¶¶ 58(e), 58(k).)

In his Memorandum, Whipple seeks further information about the time frame alleged in count twenty, from August 2016 through November 2016. (Dkt. 53-1 at 8.) As the indictment makes clear, Whipple's conduit contribution involves a course of conduct during that period, which began with his receipt of money from Khawaja in August 2016. (Dkt. 1 ¶ 58(e).) It continued with his receipt of money from Khawaja, through Diab, on September 8, 2016; with his contribution of $100,000 to Political Committee 2 on September 8, 2016; and with Political Committee 2 and 5's filing of reports with the FEC on October 15, 2016, and December 8, 2016, respectively.[3]

Whipple also notes that, although count twenty alleges he permitted his name to be used to effect contributions to Political Committees 2 and 5, he is "not alleged to have committed any overt acts relating to Political Committee 5." (Dkt. 53-1). Again, the indictment makes clear that Political Committee 2 was a joint fundraising committee connected with a campaign for the Office of President of the United States, and Political Committee 5 was the governing body for a national political party. (Dkt. 1 ¶¶ 10, 16). Joint fundraising committees allow one large committee to fundraise on behalf of a number of candidates and committees. So, Whipple's contribution to Political Committee 2 was a contribution to a number of political committees, including Political

---

[3] In any event, the unit of prosecution for this offense is contributions in excess of $25,000 during one calendar year. 52 U.S.C. § 30109(d)(1)(A)(i). The indictment could have charged Whipple with making conduit contributions in 2016, but instead provides even more specificity about the government's case against him.

Committee 5. The FEC maintains a public database that shows exactly how Whipple's unlawful contributions were distributed and reported by the political committees to which he contributed.

2. **Count Thirty**

Count thirty alleges a violation of the same statutes as count twenty. Again, it correctly states the elements of the offense. (Dkt. 1 ¶ 92.) Again, it is contextualized by allegations in count thirteen (Dkt. 1 ¶ 58(n).) And, again, FEC data shows exactly how Whipple's unlawful contributions were distributed and reported.

3. **Count Fifty-Two**

Count fifty-two alleges obstruction of justice, in violation of 18 U.S.C. § 1503, and correctly states the elements of that offense. *United States v. Hawkins*, 185 F. Supp. 3d 114, 126-27 (D.D.C. 2016) (elements of 18 U.S.C. § 1503). It details the nature of Whipple's false statements to an FBI agent, made after he was advised of the grand jury investigation, and the government provided him with a recording of the interview in which he made those false statements.

Whipple claims that the indictment "is silent as to how Mr. Whipple 'corruptly' obstructed or endeavored to obstruct a grand jury proceeding . . . ." (Dkt. 53-1 at 10.) It is not: it alleges he did so by making false statements to the FBI. (Dkt. 1 ¶ 136.) Throughout the interview, Whipple maintained that the money he contributed to the political committees was his own, and that payments from Khawaja were for work done by Whipple, unrelated to the contributions. The grand jury found, and the government alleges, that those statements were lies. Whipple also claims that the government has failed to establish a nexus between his statements and the grand jury investigation. (Dkt. 53-1 at 9-10.) His claim of insufficient notice on this point is nonsense, because

the recording produced in discovery made this nexus abundantly clear. An FBI agent informed Whipple that:

> We're FBI agents, it is against the law to lie to us, and there is a grand jury open in Washington, D.C. So, what we're going to do is we're going to take the information you give us, provide it to the grand jury, we absolutely will do that, and if the grand jury finds out that you haven't been honest with us, that could be viewed as obstructing our investigation.

Whipple made false statements after receiving that advice—as the recording makes clear—and those false statements were reported to the grand jury. Whipple knows this, because one of the agents who participated in this interview later testified before the grand jury, and the government produced a transcript of his testimony.

### 4. Whipple's Alternative Explanation Does Not Justify a Bill of Particulars.

Read together, several of Whipple's requests appear to advance an alternate explanation for his conduct: that he made his own political contributions, and any payments from Khawaja were not reimbursements for contributions but were in exchange for work (Dkt. 53 ¶¶ 11-16). That the defendant presents this alternate theory demonstrates that he understands the charges and does not need additional information. The availability of a defense argument to dispute *mens rea* does not justify a bill of particulars. *See United States v. Stone*, No. 12-CR-0072 (JCC), 2013 U.S. Dist. LEXIS 70000, at *8-9 (E.D. Cal. 2013) (in a murder case, rejecting request for a bill of particulars seeking disclosure of facts "that the violence was willfully inflicted or premeditated . . . as opposed to [in] self-defense, in defense of Mr. Fuentes, or in mutual combat.").

The indictment provides Whipple with clear notice of the government's allegations, and the discovery—and other publicly-available information—contains all that he needs to answer them. Whipple's requests for further information amount to a demand for information that he

already has and an effort to have the government further detail its case against him. Those requests should be denied.

                                                                       Respectfully submitted,

                                                                       COREY R. AMUNDSON  
                                                                       Chief, Public Integrity Section  
                                                                       Criminal Division  
                                                                       U.S. Department of Justice

                         By:     */s/ Michael J. Romano*  
                                                                      Michael J. Romano  
                                                                       James C. Mann  
                                                                       Trial Attorneys  
                                                                       Public Integrity Section  
                                                                       Criminal Division  
                                                                       U.S. Department of Justice

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this date, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record for the defendant.

Dated: May 1, 2020                                         */s/ Michael J. Romano*
                                                                          Michael J. Romano
                                                                          Trial Attorney
                                                                          Public Integrity Section
                                                                          Criminal Division
                                                                          U.S. Department of Justice