```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA
 2

 3    UNITED STATES OF AMERICA,
                                        Criminal Action
 4              Plaintiff,              No. 1:19-cr-374

 5         vs.                          Washington, DC
                                        December 7, 2020
 6    AHMAD KHAWAJA, et al.,
                                        11:35 a.m.
 7              Defendants.
      _____/
 8

 9          TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE
             BEFORE THE HONORABLE RANDOLPH D. MOSS
10                UNITED STATES DISTRICT JUDGE

11
      APPEARANCES:
12
      For the Government:     JAMES MANN
13                            MICHAEL ROMANO
                                U.S. Department of Justice
14                              Criminal Division
                                1400 New York Avenue, NW
15                              Washington, DC 20005

16
      For Defendant Nader:    EMILY VOSHELL
17                              Kaiser Dillon, PLLC
                                1099 14th Street, NW
18                              8th Floor West
                                Washington, DC 20005
19

20    For Defendant Boulos:   KAREN WILLIAMS
                                Cozen O'Connor
21                              1200 19th Street, NW, Suite 300
                                Washington, DC 20036
22

23    For Defendant El-Saadi: MEGAN CHURCH
                                MoloLamken
24                              300 N. LaSalle Street, Suite 5350
                                Chicago, IL 60654
25
```

1    **APPEARANCES CONTINUED:**

2    **For Defendant Diab:**      **HARLAND BRAUN**
                                 Harland W. Braun
3                                 10880 Wilshire Blvd., Suite 1020
                                 Los Angeles, CA 90024
4
                                 **-AND-**
5
                                 **PLEASANT BRODNAX, III**
6                                 L/O of Pleasant S. Brodnax, III
                                 1701 Penn. Avenue, NW, Suite 200
7                                 Washington, DC 20006

8

     **For Defendant Hill:**      **EDWARD MACMAHON, JR.**
9                                 Edward B. MacMahon, Jr., PLC
                                 PO Box 25
10                                107 E. Washington Street
                                 Middleburg, VA 20118
11


12   **For Defendant Whipple:**   **G. ALLEN DALE**
                                 L/O of G. Allen Dale, PLLC
13                                901 New York Ave, NW
                                 Suite 500 West
14                                Washington, DC 20001

15

16

17

18

19

20

21

22

     **Court Reporter:**          **JEFF M. HOOK**
23                                Official Court Reporter
                                 U.S. District & Bankruptcy Courts
24                                333 Constitution Avenue, NW
                                 Room 4700-C
25                                Washington, DC 20001

1          **P R O C E E D I N G S**

2          **DEPUTY CLERK:**  This is criminal action 19-374, the

3    United States of America versus George Nader, Roy Boulos,

4    Mohammad Diab, Rani El-Saadi, Stevan Hill and Thayne

5    Whipple.  All defendants are appearing by telephone.  Also

6    appearing by phone for the Government, James Mann and

7    Michael Romano.  Appearing for defendants, Emily Voshell,

8    Karen Williams, Harland Braun, Megan Church, Edward MacMahon

9    and George Dale.

10         **THE COURT:**  Well, good morning to all of you.

11   Before we get going, I want to make sure that everyone

12   consents to our proceeding telephonically today.  So if we

13   can just quickly run through each of the counsel in order

14   and just make sure that everyone consents.

15         So counsel for Mr. Nader?

16         **MS. VOSHELL:**  Yes, this is Emily Voshell on behalf

17   of Mr. Nader, and Mr. Nader consents to appearing by phone.

18         **THE COURT:**  Thank you.  Mr. Boulos, counsel for

19   Mr. Boulos?

20         **MS. WILLIAMS:**  Yes, your Honor, this is Karen

21   Williams on behalf of Mr. Boulos, and he consents to

22   proceeding by phone.

23         **THE COURT:**  Thank you.  Counsel for Mr. Diab?

24         **MR. BRAUN:**  Yes, this is Harland Braun.  Mr. Diab

25   consents, your Honor.  Thank you.

1          **THE COURT:**  Okay, thank you.  Counsel for

2     Mr. El-Saadi?

3          **MS. CHURCH:**  This is Megan Church, your Honor.

4     Mr. El-Saadi consents to proceeding by phone.

5          **THE COURT:**  All right.  Counsel for Mr. Hill?

6          **MR. MACMAHON:**  This is Edward MacMahon, your

7     Honor, good morning.  Mr. Hill consents as well.

8          **THE COURT:**  Good morning, thank you.  And counsel

9     for Mr. Whipple?

10         **MR. DALE:**  Good morning, your Honor.  Allen Dale

11    on behalf of Mr. Whipple, and he consents to appearing via

12    phone.

13         **THE COURT:**  Thank you all.  Before we go further,

14    I want to remind everybody that under the Court's rules,

15    it's not permissible to record or to rebroadcast these

16    proceedings, and I'll order that nobody do so.  I'll ask

17    that everyone mute your microphone when you're not speaking

18    so we don't get feedback.  I'll ask you to speak into the

19    handset when it is your turn so we can hear you clearly.

20    I'll ask that you introduce yourself by name each time you

21    speak so we have a clear record.  And I do conclude that

22    it's appropriate for us to proceed by telephone conference

23    today given the fact that defendants are located in various

24    parts of the country and it's not safe to travel.  In any

25    event, it's not safe to convene in the courthouse with the

1    pandemic surging the way it is at the moment.

2              So I guess what I'd like today from the parties is

3    an update of where we stand.  I do have a couple of

4    questions about Mr. El-Saadi's pending motion that I'd like

5    to raise with counsel.  I'm happy to take up anything else

6    counsel would like to raise today.  So why don't we start

7    with counsel for the United States.

8              Mr. Mann or Mr. Romano?

9              **MR. MANN:**  Yes, your Honor, this is James Mann for

10   the Government.  Since our last status appearance in early

11   October, not much has changed in the matter.  As your Honor

12   referenced, the motions filed by Mr. El-Saadi are now fully

13   briefed.  We had some discovery that we referenced on the

14   last call with your Honor that was due to be sent out to the

15   defendants, and the Government has now done so.  And we

16   communicated with your deputy and received some available

17   dates from the Court for a potential trial date.  And with

18   respect to that -- and I've communicated that with counsel

19   for the defendants.  And so with respect to a trial date, my

20   recommendation would be that we reserve a two-week trial

21   calendar starting on December 6th, with your Honor to set

22   this date for trial recognizing that things may change

23   between now and then.  But that seems to be an available

24   date, and it will give us all a target date to base other

25   things off of.

1          I guess the only other outstanding issue would be

2     the status of Mr. Khawaja.  As far as I know, he remains in

3     Lithuania and is continuing to contest extradition.  And I

4     don't have any further update or news with respect to how

5     long that's expected to take other than what I provided the

6     last time, which was six to 12 months beginning I believe in

7     November of this year which was the transmission date of the

8     formal extradition package.

9          **THE COURT:**  Okay, thank you.  And with respect to

10    the discovery process, I don't think I've had the

11    opportunity yet to put on the record the admonition required

12    under the Due Process Protection Act, so I'll do that now as

13    well.  Pursuant to the Due Process Protection Act, it is

14    hereby ordered that all government counsel shall review

15    their disclosure obligations under Brady versus Maryland and

16    its progeny as set forth in local criminal rule 5.1, and

17    comply with those provisions.  The failure to comply could

18    result in dismissal of the indictment or information,

19    dismissal of individual charges, exclusion of government

20    evidence or witnesses, continuances, bar discipline or any

21    other remedy that is just under the circumstances.

22         Mr. Mann, can I get you just to acknowledge for

23    the record that the Government understands its obligations

24    under Brady?

25         **MR. MANN:**  Yes, your Honor, the Government

1    understands.

2              THE COURT:  Okay, thank you.  I just heard a tone

3    of someone either joining or leaving the call.  I want to

4    make sure, do we still have the court reporter on the line?

5              COURT REPORTER:  Yes, Judge, I am still here.

6              MR. BRODNAX:  Good morning, your Honor.  That was

7    Pleasant Brodnax.  I thought this was a video and I just

8    joined.

9              THE COURT:  Oh, okay.  Thank you.  So anything

10   else, Mr. Mann, before I hear from defense counsel?

11             MR. MANN:  I don't believe so, your Honor.  Thank

12   you.

13             THE COURT:  All right.  So Ms. Voshell, do you

14   want to start?

15             MS. VOSHELL:  Yes, your Honor.  On behalf of

16   Mr. Nader, we agree with proceeding as the Government has

17   suggested.

18             THE COURT:  All right.  And have you conferred

19   with Mr. Nader about the Speedy Trial Act and how it applies

20   in his case?

21             MS. VOSHELL:  Yes, we have, your Honor.

22             THE COURT:  I'm sorry?

23             MS. VOSHELL:  I said we have, your Honor, and we

24   have no objection to waiving time under the act.

25             THE COURT:  Okay, thank you.  Then Ms. Williams.

1      **MS. WILLIAMS:**  Yes, your Honor.  We have no

2  objection to the plan that the Government outlined.  And I

3  have conferred with Mr. Boulos about the Speedy Trial Act,

4  and he has no objection to the waiver of time.

5      **THE COURT:**  All right, great, thank you.  And then

6  I don't know if it's Mr. Shur or Mr. Brodnax with respect to

7  Mr. Diab -- oh, I'm sorry, I apologize, I'm confusing

8  counsel.  I guess it's either Mr. Braun or Mr. Brodnax.

9      **MR. BRODNAX:**  Your Honor, I just joined the call

10  so I did not hear what the Government had suggested.

11  Mr. Braun may want to proceed just to let the Court know.

12      **MR. BRAUN:**  Yes, your Honor, we agree with the

13  Government.  I've discussed it with Mr. Diab who's on the

14  line.

15      **THE COURT:**  And is he amenable to tolling time

16  under the Speedy Trial Act until the December 6th date?

17      **MR. BRAUN:**  Yes, your Honor.

18      **THE COURT:**  And now Ms. Church.

19      **MS. CHURCH:**  Yes, your Honor.  Megan Church for

20  Mr. El-Saadi.  We agree with the Government's proposal for

21  the December 6th trial date.  I've conferred with

22  Mr. El-Saadi who agrees to the exclusion of time under the

23  Speedy Trial Act.

24      **THE COURT:**  Okay, thank you.  And Mr. MacMahon.

25      **MR. MACMAHON:**  Yes, your Honor.  Edward MacMahon

1    for Mr. Hill.  We agree with the Government's plans as well.

2    I've discussed this with Mr. Hill who consents to the waiver

3    under the Speedy Trial Act.

4          THE COURT:  All right, thank you.  And then

5    Mr. Dale.

6          MR. DALE:  Thank you, your Honor.  I've received

7    discovery.  Mr. Whipple and I both agree to setting the

8    trial date for December 6th.  I've spoken with Mr. Whipple

9    about waiving or tolling his Speedy Trial time, and he has

10   no objection to tolling the time until December 6th

11   certainly given the current pandemic circumstances.

12         THE COURT:  Thank you all.  So what I will do is

13   I'm going to go ahead and put the matter down for trial for

14   two weeks starting on December 6th, 2021.  And I'm going to

15   toll time between now and December 6th, 2021 under the ends

16   of justice exception to the Speedy Trial Act.  The Court

17   concludes that the continuance would serve the interests of

18   justice, and those interests outweigh the best interests of

19   the public and the defendants in a Speedy Trial.  First of

20   all, everyone is amenable and agrees to tolling time between

21   now and December 6th.  In addition, this is a complicated

22   case with voluminous discovery.  I conclude that that period

23   of time is necessary for preparation, particularly in light

24   of the pandemic and the additional burdens that the pandemic

25   is placing on everybody.  And so for all those reasons, the

1    Court concludes that it is appropriate to toll time between

2    now and December 6th, 2021.

3              Let me ask whether any of the defense counsel have

4    any additional issues that they'd like to raise today before

5    I turn to Mr. El-Saadi's motion?  Let me just run through it

6    so you don't all have to speak or not speak at once.

7              Ms. Voshell?

8              **MS. VOSHELL:**  No additional issues, your Honor.

9    Thank you.

10             **THE COURT:**  Ms. Williams?

11             **MS. WILLIAMS:**  No additional issues, your Honor.

12   Thank you.

13             **THE COURT:**  All right.  Mr. Braun or Mr. Brodnax?

14             **MR. BRAUN:**  None, your Honor.  Thank you.

15             **THE COURT:**  Ms. Church?

16             **MS. CHURCH:**  None, your Honor.  Thank you.

17             **THE COURT:**  Mr. MacMahon?

18             **MR. MACMAHON:**  No additional issues, your Honor.

19   Thank you.

20             **THE COURT:**  And Mr. Dale?

21             **MR. DALE:**  Nothing else, your Honor.  Thank you.

22             **THE COURT:**  All right, thank you.

23             **MR. MANN:**  Your Honor, the Government -- I

24   apologize, your Honor.  The Government just has one

25   question.

1      **THE COURT:**  Yes, go ahead.

2      **MR. MANN:**  This is James Mann.  Does your Honor

3   have a standard scheduling order that will issue with

4   respect to motions in limine and other deadlines or is that

5   something that you would like the parties to meet and confer

6   about and propose to the Court?

7      **THE COURT:**  I actually -- I don't have a standard

8   one that I issue in every case, so I do think it probably

9   makes sense for the parties to confer amongst themselves and

10  to submit a joint status report to the Court with their

11  proposal for scheduling of motions in limine and any other

12  motions.

13      Do you want to propose a schedule for that,

14  Mr. Mann?

15      **MR. MANN:**  I don't have one off the top of my

16  head, your Honor, but we will -- I will confer with counsel

17  and we will submit something soon after, probably the first

18  of the year, to your Honor, if your Honor's amenable?

19      **THE COURT:**  I didn't mean for you to propose a

20  schedule today, but just a date for a joint status report.

21  But why don't I just provide that the parties shall file a

22  joint status report with the Court with respect to further

23  scheduling matters in this case on or before January 8th.

24  And we can also schedule a pretrial conference now, which

25  should be pretty close to the trial date sometime in

1    November, maybe do it before the Thanksgiving holiday next

2    year.

3              Let me ask, maybe the courtroom deputy may have a

4    suggestion of a date for that.

5              **DEPUTY CLERK:**  Yes, your Honor, hold on one

6    moment.  You can do a pretrial conference on November 9th at

7    11:00 a.m.

8              **THE COURT:**  Does that work for everyone?

9    Mr. Mann?

10             **MR. MANN:**  Yes, your Honor.  This is Mr. Mann.

11   Sorry, yes, your Honor.

12             **THE COURT:**  Ms. Voshell?

13             **MS. VOSHELL:**  Yes, your Honor.

14             **THE COURT:**  Ms. Williams?  You may be on mute

15   still, Ms. Williams.

16             **MS. WILLIAMS:**  I apologize, your Honor.  Yes, that

17   date works.

18             **THE COURT:**  Okay, thank you.  Mr. Braun?

19             **MR. BRAUN:**  Yes, your Honor.

20             **THE COURT:**  Okay.  Ms. Church?

21             **MS. CHURCH:**  Unfortunately, no, your Honor.  I

22   will still be in trial in the Northern District of Illinois,

23   and I expect that trial to conclude by November 19th.  So if

24   it's possible to have a date I guess the week of

25   Thanksgiving, I will be available then.

1    **DEPUTY CLERK:**  Your Honor, the 22nd -- this is

2    Kristin.  The 22nd at 11:00 a.m. is available.

3    **THE COURT:**  Okay.  Does that work for you,

4    Mr. Mann?

5    **MR. MANN:**  Yes, your Honor.

6    **THE COURT:**  Ms. Voshell?

7    **MS. VOSHELL:**  Yes, your Honor.

8    **THE COURT:**  Was that Ms. Williams, that was your

9    suggestion was doing it after the 19th?

10    **MS. CHURCH:**  No, it was Megan Church.

11    **THE COURT:**  Yes, okay.  Ms. Williams, does the

12    22nd work?

13    **MS. WILLIAMS:**  Yes, the 22nd works.

14    **THE COURT:**  Thank you.  And Mr. Braun?

15    **MR. BRAUN:**  Yes, your Honor, that works.

16    **THE COURT:**  And it works for Ms. Church.  How

17    about Mr. MacMahon?

18    **MR. MACMAHON:**  Yes, your Honor, that's fine.

19    **THE COURT:**  And Mr. Dale?

20    **MR. DALE:**  Yes, your Honor, the 22nd works.

21    **THE COURT:**  Thank you.  So we'll put the pretrial

22    conference down for November 22nd, 2021 at 11:00 a.m.

23    **MR. DALE:**  Your Honor, this is Allen Dale.  I have

24    a question, though.

25    **THE COURT:**  Yes, please.

1      **MR. DALE:**  Assuming hopefully that we'll all be

2  able to convene in person, would the defendants -- my

3  defendant especially who's in California, be able to appear

4  by phone?

5      **THE COURT:**  For the pretrial conference?

6      **MR. DALE:**  For the pretrial.

7      **THE COURT:**  I have no objection to that.  Any

8  objection from the Government?

9      **MR. MANN:**  No, your Honor.  Thank you.

10      **THE COURT:**  So let me ask Mr. Whipple --

11  Mr. Whipple, can you hear me on the telephone okay?

12      **DEFENDANT WHIPPLE:**  Yes, your Honor.

13      **THE COURT:**  Mr. Whipple, do you understand that

14  you have a right to be physically present at any of the

15  hearings or proceedings in this case?

16      **DEFENDANT WHIPPLE:**  Yes, I do, and I would consent

17  to do it by phone.

18      **THE COURT:**  Is that your preference, to

19  participate by telephone rather than being here in person?

20      **DEFENDANT WHIPPLE:**  Yes, absolutely.

21      **THE COURT:**  Well, I will grant that request.  But

22  Mr. Whipple, you are welcome at any point in time to change

23  your mind and appear in person if that's what you prefer to

24  do, okay?

25      **DEFENDANT WHIPPLE:**  Thank you, your Honor.

1      **MR. MACMAHON:**  Your Honor, this is Edward

2  MacMahon.  Mr. Hill is of course out in California as well.

3  I haven't been able to consult with him on this.  I would

4  just ask leave to have him not appear.  I would file a

5  written waiver if that occurred and he didn't want to come

6  for the pretrial.

7      **THE COURT:**  Okay.  As long as you file a written

8  waiver, that will be fine.

9      **MR. MACMAHON:**  Thank you, your Honor.

10      **THE COURT:**  Okay, thank you.

11      **MS. CHURCH:**  Your Honor, this is Megan Church on

12  behalf of Rani El-Saadi.  I'd request the same.

13      **THE COURT:**  I'll provide that for anyone who's on

14  the call today, if after counsel's had an opportunity to

15  confer with their clients, if they want to file a written

16  waiver on the record of physical appearances for purposes of

17  the pretrial conference, you're welcome to do so.  But

18  physical presence, I would still expect you to be

19  participating by telephone.

20      All right.  So I had a couple of questions about

21  Mr. El-Saadi's motion.  I'm happy to hear any additional

22  argument if you want to offer any today.  One question I had

23  was in -- particularly in his reply brief, Mr. El-Saadi

24  makes an alternative argument with respect to venue and says

25  that the contribution at issue didn't even go directly to

1    the campaign committee that was located in D.C., it went to

2    the campaign committee that was the party to the joint

3    fundraising agreement, and then that committee transferred

4    the funds to the committee in D.C.

5            And the question I had was whether the

6    contribution, assuming it was made in the amount of $150,000

7    to the committee located outside of D.C., did that

8    contribution exceed the limit of what that committee was

9    allowed to accept?  In other words, was the joint

10   fundraising arrangement necessary in order to distribute the

11   funds or was that simply just by virtue of agreement and

12   convenience of the committees?  And I --

13           **MR. MANN:**  Your Honor, this is James Mann -- oh,

14   sorry, I thought --

15           **THE COURT:**  I was going to direct the question to

16   you, Mr. Mann.

17           **MR. MANN:**  So this is James Mann for the

18   Government, your Honor.  So the way the joint fundraising

19   committee works is the maximum contribution allowed is based

20   upon the participating committees.  So the joint fundraising

21   committee itself is not really an entity that accepts money.

22   It accepts money on behalf of multiple subservient entities,

23   and then divides them according to its -- according to

24   the -- sort of the schedule under the joint fundraising

25   committee.

1          So the max -- that contribution per se is not --

2    does not exceed the max of the joint fundraising committee.

3    But by definition, the way the joint fundraising committee

4    works is it receives the money and then divides it amongst

5    multiple entities according to what they are permitted to

6    receive.

7          THE COURT:  That is sort of what my question was,

8    which is if the funds had to be distributed to the committee

9    in D.C. in order to stay within the campaign contribution

10   limits, that might affect my view with respect to the venue

11   issue.

12         MR. MANN:  I believe the answer to that is yes,

13   your Honor, in that the campaign contribution limits for a

14   joint fundraising committee are established by the

15   committees beneath that joint fundraising committee.  And so

16   they -- what happens is the joint fundraising committee

17   receives that money and then distributes it to the entities

18   underneath it.  That is how the joint fundraising committee

19   works.  And the D.C. based entity is -- was part of that

20   joint fundraising committee.

21         THE COURT:  Well, that's not quite -- I mean, you

22   could write a check for $25 to a joint fundraising committee

23   I assume that then might just share 12 and a half dollars

24   with the two committees that are participating in the joint

25   fundraising committee.  What I'm getting at is if there were

1   two committees that participated in the joint fundraising

2   arrangement, and each committee was allowed to raise -- or

3   was allowed to accept contributions of up to, for example,

4   $75,000, then one could conclude that the funds had to

5   eventually flow to the committee in D.C.

6        On the other hand, if one committee was entitled

7   to receive contributions of $150,000 or more, then the flow

8   through to the committee in D.C. was just by virtue of

9   agreement of the participants in the joint fundraising

10  endeavor and not something that was required by FECA.

11       **MR. MANN:**  I think I see what your Honor is

12  saying, and I guess I don't know the -- so it is not a

13  situation where there were only two committees, there were

14  many, many committees underneath it.  Each of the state

15  party committees were also a part of it at any given time.

16  So there was a vast array of committees underneath it.  The

17  largest recipient was the D.C. committee, which was the

18  national party.  And then there was the campaign committee

19  of the candidate, which is capped out at $2,700.  And then

20  there's the national committee and then the various state

21  committees which all have their individual caps.

22       I don't know as I stand here whether that --

23  whether it could have distributed lawfully without violating

24  campaign finance to all of the state committees and the

25  campaign committee, and whether that could have absorbed all

1     the money lawfully and then no money would have flowed to

2     the national committee.  I just don't know the answer to

3     that, your Honor.

4              **THE COURT:**  Well, it might be helpful for me to

5     know that at some point.  The other question I had for you

6     was more of a practical question, which is if it -- I guess

7     my question for you is, is it your preference for the Court

8     to decide this question now?

9              In other words, if the Court were to decide, for

10    example, that I don't think there's venue with respect to

11    the counts involving the individual -- the separate

12    contribution -- although I thought there was venue with

13    respect to the conspiracy count, and I was not inclined to

14    sever, would you go ahead and charge that individual count

15    somewhere else or possibly decide, well, you actually might

16    support severing so you could bring the entire case

17    somewhere else; or given the fact that there's an awful lot

18    of overlap -- and perhaps a hundred percent overlap, between

19    the conspiracy count and the count with respect to the

20    single contribution, would you just say, well, that's not

21    much of a material difference to us?

22             The reason I'm posing the question is what I'm

23    wondering is whether this is an issue that the Court needs

24    to decide now on the basis of the indictment itself or

25    whether it's something that could simply be reserved for a

1   Rule 29 motion or otherwise after the evidence comes in in

2   the case; and that from the Government's perspective, it

3   doesn't really have a strong view as to which time it's

4   decided, because it's not going to affect how the Government

5   actually proceeds in the case.  And the proof is going to

6   be, I assume, identical either way in the case.

7           And so why not just reserve the question for a

8   Rule 29 motion or something like that?

9           **MR. MANN:**  Thank you, your Honor.  This is James

10  Mann for the Government.  So with respect to the

11  Government's preference, I think to the extent that the

12  factual record is sufficient and doesn't require trial

13  evidence or evidence, then the Government would prefer that

14  your Honor decide now.  Because if your Honor were to decide

15  the Rule 29, the Government I don't believe would be

16  permitted to bring the charges in a venue that would satisfy

17  your Honor's opinion.

18          And the reason that I say that is if venue -- if

19  your Honor were to decide that venue did not lie with

20  respect to Mr. El-Saadi, that is the same basis for venue on

21  the individual counts with respect to the other remaining

22  defendants.  And so the Government may very well decide to

23  proceed on the conspiracy and the obstruction charges

24  against the remaining defendants as charged in D.C., but

25  then to bring the individual conduit charges where they lie.

1    I have not -- these are all matters I would have to review

2    up my supervisory chain.  It may very well be, given the

3    dearth of case law on this issue -- which I think is

4    recognized in the parties' briefs, that the Government might

5    choose to take up a venue ruling.  I don't know, so I don't

6    want to tell you that that's something that the Government

7    would do, your Honor.  I think there's a varying array of

8    options.

9              I think the most dangerous for the Government

10   would be if your Honor -- now, certainly if your Honor were

11   to decide that more facts were necessary such as whether or

12   not the contribution -- the one that your Honor raised

13   earlier, without rehashing that, that that was a factual

14   matter that your Honor needed facts on to decide on venue,

15   then those we could present at trial or even in a separate

16   evidentiary hearing if your Honor wanted it that way, and

17   could move forward there.

18             But if your Honor's decision were that there were

19   enough facts to make a venue-based decision, I think the

20   most dangerous course of action for the Government would be

21   to reserve that for Rule 29 and then risk getting a guilty

22   verdict and then be Rule 29'ed.  Because I guess I don't

23   know as I sit here on this phone whether we would be able to

24   then bring those charges in what your Honor deemed to be a

25   proper venue to remedy that at that point in time.  That

1   Rule 29 may be the end of it for the Government.

2          And so that to me seems like a big risk for the

3   Government, and so I think the Government would prefer that

4   if your Honor decides there are enough facts at this point

5   in time to make that decision, that we move forward with the

6   decision on the motion.

7          **THE COURT:**  Fair enough.  And I suppose also even

8   short of the Rule 29, it's possible a jury could conclude

9   there wasn't venue as well.  The reason I'm posing the

10  question, though, is it's just not at all clear to me that

11  the substantive counts add much, if anything, beyond the

12  conspiracy.  Maybe it makes some difference when it comes to

13  calculating sentences if there were a conviction, although I

14  doubt it's much of a difference.  And just given the nature

15  of a claim of a conduit contribution, it's almost always

16  going to be a conspiracy -- there's almost always going to

17  be a conspiracy or an alleged conspiracy when there's an

18  alleged conduit contribution.

19         So if the jury were to convict, for example, on

20  the conspiracy counts, it's not clear to me what having the

21  conduit -- the substantive claim of the conduit contribution

22  would actually add from the Government's perspective.  If

23  the jury were to acquit on the conspiracy charge, it seems

24  doubtful that you would have much of a conduit claim as

25  well, unless I'm missing something.

1    **MR. MANN:**  So again, this is James Mann for the

2    Government, your Honor.  And I largely agree with your

3    Honor, the only difference being that sometimes I have found

4    that juries hang up on the agreement part of the conspiracy.

5    So they may very well find that there was a conduit

6    contribution in this case by Mr. El-Saadi, but get hung up

7    on what it means to have an agreement and who that agreement

8    was with and who was involved.  And so while a substantive

9    charge would not -- adds nothing as an evidentiary basis at

10   trial nor do I believe it would add anything -- I mean, yes,

11   arguably it would increase the statutory maximum should --

12   at sentencing.  But given where the guidelines are in this

13   case, I don't have any reason to believe -- that is not why

14   the Government has charged it, I guess I should say, for any

15   reason there.

16          My concern, your Honor, would just be that on

17   the -- in the presentation of evidence, that the jury may

18   very well be convinced of the conduit contribution but may

19   get hung up on the agreement or the conspiracy.

20          **THE COURT:**  Okay.  Was there anything else you

21   wanted to add with respect to the pending motion?

22          **MR. MANN:**  No, your Honor.

23          **THE COURT:**  On either piece of it?

24          **MR. MANN:**  No, your Honor.  Thank you very much.

25          **THE COURT:**  All right.  Ms. Church.

1      **MS. CHURCH:**  Your Honor, Megan Church on behalf of

2   Rani El-Saadi.  We think that the matter is ripe for

3   resolution now based on the parties' briefing, and so we

4   would ask your Honor to proceed with issuing a ruling.  We

5   certainly understand the Government would like clarity from

6   the supervisory chain as to what their preference is.  We

7   certainly have no objection, and we may ultimately be in

8   agreement on that.  But we think that we should be able to

9   go forward.

10      There's certainly been nothing in the discovery

11   materials in terms of facts as we understand them to be that

12   would alter what's already set out in the parties' briefing.

13   And so for those reasons, we would like to move forward.

14      **THE COURT:**  Let me ask you, do you think that the

15   facts don't matter?  So, for example, the question that I

16   outlined wouldn't make a difference -- depending on whatever

17   the proof is with respect to that, wouldn't make any

18   difference?

19      **MS. CHURCH:**  Your Honor, I don't think it would

20   make a difference in this particular instance.  And the

21   reason for that is, first and foremost, as charged, the

22   contemplation of what is a conduit contribution is improper.

23   So that's one of our arguments on why the count should be

24   dismissed for venue.

25      With respect to whether or not the subsequent

1    payment to another -- to essentially the national committee

2    was necessary in order for the contribution to be allowable

3    and therefore -- you know, assuming the Court's getting at

4    whether it was foreseeable to Mr. El-Saadi that when making

5    a $150,000 contribution he necessarily was also making

6    payments to these other committees, I don't think that

7    ultimately when he was making a single payment to a single

8    entity, whether or not those entities had agreements really

9    would affect Mr. El-Saadi's original contribution.  To me,

10   it's one step removed from what the actual conduct was,

11   which was the payment to the national -- or to the

12   fundraising committee.

13           THE COURT:  Here's why I think it potentially

14   makes a difference, which is -- and I need to look at the

15   text of the statute.  And section 30122 provides that it is

16   unlawful for a person to knowingly permit his name to be

17   used to effect a conduit contribution -- and I'm inserting

18   conduit in there.  The reason that you use someone else's

19   name to effect the conduit contribution can be so that the

20   actual contributor can exceed the contribution limits.  And

21   as Mr. Mann said, the joint fundraising committee isn't a

22   committee in the sense of FECA for purposes of accepting

23   contributions, it's something that is formed for purposes of

24   channeling contributions to political committees under FECA.

25           And so if you have person A who has already

1    contributed $2,700 to the candidate's committee, and would

2    like to contribute more to the candidate's committee but

3    can't do so lawfully, and that person finds somebody else

4    and says, "Here, I'll pay you back $2,700.  You make a

5    contribution of $2,700 to the candidate's committee."  That

6    person -- person B has effected a conduit contribution.  But

7    the contribution is not effected in that sense -- well, let

8    me put it this way.

9           The effecting of the contribution is the fact that

10   the committee would not ordinarily accept that contribution

11   because the person A is already maxed out.  But you're able

12   to effect an unlawful contribution by using the conduit in a

13   way in which now you have somebody who's able to contribute

14   $5,400, and therefore it's effecting an illegal

15   contribution.  But it's -- the effecting of it is contingent

16   on in essence the committee either being perhaps witting, or

17   in this case allegedly unwitting.  And if you have an

18   allegedly unwitting committee, the only way you effect the

19   contribution to that committee that is unlawful is through

20   use of the conduit.  And that's a simpler example because it

21   doesn't involve a joint fundraising arrangement.

22          But the same principle then might well apply to a

23   joint fundraising circumstance.  So if you had a joint

24   fundraising committee where there were two committees, there

25   was the campaign committee -- the candidate's committee

1   which could accept $2,700 -- and I can't recall off the top

2   of my head now what the national parties are able to accept.

3   I think at one point in time it was 37-5 or something like

4   that.  It's been indexed for inflation so it's probably

5   considerably higher than that now.  But for present purposes

6   of my question, imagine that it's 37-5.  If then you have

7   somebody who's already maxed out to the candidate's

8   committee and to the national committee and who wants to pay

9   more, if that person contributes -- gets a conduit to pay

10  the -- to give the joint fundraising committee in excess of

11  $2,700, then arguably that person is then allowing their

12  name to be permitted to effect a contribution that otherwise

13  would not be accepted by the national committee, because the

14  national committee would otherwise say we can't accept this

15  thing because it's already beyond the contribution limit.

16  That's the reason I'm asking these questions.

17          The effecting of the contribution is contingent on

18  the unwitting committee being willing to accept it.  You

19  can't effect the contribution if the committee's going to

20  say no.  I mean, I take it it happens all the time that

21  people accidentally, for example, contribute more than

22  they're allowed to, and the committee just sends it back and

23  says we can't take this, I'm sorry.  So the way one effects

24  a conduit contribution is by using someone else's name so

25  the committee then will accept it.

1      Ms. Church, are you still there?

2      **MS. CHURCH:**  I'm still here, your Honor, yes.

3      **THE COURT:**  That's what I'm trying to get at.

4   That's why I wonder whether what the arrangement is with

5   respect to how the funds are distributed may make a

6   difference, because it turns -- it's a question of whether

7   the committee that was located in D.C. would have been

8   willing to accept the contribution.  And if they wouldn't

9   have been willing to accept it because their software would

10  have kicked it out immediately and said wait a second, we've

11  already -- this person's already maxed out, we can't accept

12  it, then you wouldn't be effecting the contribution.

13  Therefore, it is the incorrect name on the contribution that

14  is then used to effect a contribution in excess of its

15  limit.

16      **MS. CHURCH:**  Yes, your Honor.  And for that, we

17  would say then the consideration should really be where was

18  the conduct that effected the illegal conduit contribution.

19  And here, with respect to Mr. El-Saadi as alleged, that

20  conduct occurred outside of the District of Columbia.  His

21  conduct, as alleged, occurred presumably in California or in

22  Nevada, not in D.C.  And so if the focus is on the conduct,

23  as what the statute asks us to consider, then Mr. El-Saadi's

24  conduct was in -- was outside of D.C.

25      And we have the interim step in between of the

1    subsequent payment from the fundraising committee to the

2    District of Columbia.  And I certainly understand where your

3    Honor's considerations are in terms of the necessary

4    component of the campaign contribution would have been

5    unlawful if it exceeded what otherwise would have been

6    permitted.  And therefore, it would not have accepted those

7    funds.  But I think that the consideration has to be, under

8    the case law, where was this contribution made, and that was

9    outside of D.C.

10            **THE COURT:**  Yeah, I'm not sure that the case law

11   quite goes that far.  I mean, I think as Mr. Mann probably

12   fairly put it, the case law is not terribly clear on this

13   question.  But if -- I mean, if someone writes a check for

14   $3,000 to a campaign committee knowing and -- knowing that's

15   in excess of the $2,700 limit and just hoping that it slips

16   through the cracks, writes that check in Nevada, gives it to

17   somebody who's hosting a fundraiser in Nevada.  The person

18   who's hosting the fundraiser in Nevada takes a whole stack

19   of checks, puts them in an envelope and mails them to the

20   candidate's campaign committee which is based -- located in

21   D.C.  The person who's doing intake in D.C. opens the

22   envelope up, goes through all the checks and goes, "Oops,

23   here's one for $3,000, gotta send it back, it's too much,"

24   and mails it back.  Has that person violated the statute at

25   that point in time or has the statutory violation occurred

1    because the campaign just refused to accept it because it

2    was in excess of the contribution limit?

3          **MS. CHURCH:**  I don't know, your Honor.  If

4    anything, it would seem like an attempt more than an actual

5    execution.

6          **THE COURT:**  Right, right, I guess that's my point.

7    I guess I'm trying to figure out for purposes of the statute

8    when the conduit contribution is actually made, and also

9    when it's effected.  And it's hard to say that you've

10   effected such a contribution if it was never accepted.  You

11   might -- I can imagine an argument that you've made or

12   perhaps you've attempted to make, but it's hard for you to

13   effect a contribution until it's actually accepted by the

14   committee.  And since contributions are really considered --

15   I mean, the contribution limits and the restrictions on

16   contributions don't apply as I understand it, if I have this

17   correctly, to the joint fundraising committee which is just

18   created for purposes of them funneling the contributions to

19   the committees.

20         The question really then is the -- whether the

21   committees that are subject to FECA and the FECA limitations

22   received the contribution in some way, whether it's a

23   contribution that's been effected to one of those entities.

24   I mean, unless I'm wrong about this.  I mean, I haven't gone

25   back to look at the FEC regulations on this, but am I right

1    in thinking that a joint fundraising committee really is

2    sort of just -- it's permitted but it's an administrative

3    convenience?  It's not the committee that is subject to the

4    various FECA limits, but conceptually there's not a big

5    difference between a joint fundraising committee and

6    somebody who's hosting a fundraiser and who's just accepting

7    checks and then passing them along.

8           **MS. CHURCH:**  Your Honor, I would say that that's

9    certainly a very fact-intensive inquiry, so that's where

10   facts do I think matter.  And to the extent that the joint

11   fundraising committee does in fact have its own accounts

12   into which it accepts contributions and then makes

13   determinations as to how those funds get subsequently

14   distributed, that to me is a distinct -- it makes it

15   distinct from just a fundraiser where a bunch of checks are

16   bundled together and then ultimately deposited into the same

17   account for that specific candidate or committee.

18           That interim step is an important one,

19   particularly when you're looking at it from the standpoint

20   of someone who's making the contribution.  They think that

21   they're making the contribution to this one overarching

22   committee.  Maybe, maybe not.  But certainly that's where

23   the check is going.  It's not I have to write 75 --

24          **THE COURT:**  I mean, I guess that's sort of my

25   question here.  This is helping me in thinking it through.

1  Is there anything illegal about a joint fundraising

2  committee accepting a check from anybody in any amount or is

3  where FECA kicks in -- and I suppose any other criminal

4  limitations kick in, is when the political committees or the

5  candidate committees are actually receiving the

6  contributions?  In other words, it's illegal for a

7  corporation, it's illegal for a foreign entity to make a

8  contribution to a political candidate or a committee.

9          If someone writes a check to a joint fundraising

10  committee and the joint fundraising committee accepts that

11  check, and it's either from a corporation that can't make

12  contributions or from a foreign individual who can't make

13  contributions, has a crime actually been committed at the

14  point in which the joint fundraising committee accepts that

15  check?  Is it a crime for the joint fundraising committee to

16  accept that check, and is it a crime for the individual who

17  writes that check?  Or is it an inchoate or perhaps an

18  attempted crime or a conspiracy to commit a crime at that

19  point in time before the funds actually make it to the

20  actual campaign committee or political committee?

21          In other words, is there something in FECA that

22  says joint fundraising committees -- you know, it's unlawful

23  for a joint fundraising committee to accept a check from a

24  foreign individual or from a corporation or in excess of

25  some statutory amount?

1   **MR. MANN:**  Your Honor, this is James Mann.  I

2   mean, if it's helpful, I can tell you that the joint

3   fundraising committee is an entity required to register

4   under FECA.  So they are required to -- so all of the

5   contributions made in this case are reported to FECA two

6   times, once by the joint fundraising committee as a single

7   contribution, and then by all of the entities that then

8   received it.  Both of them are reported in the name of Rani

9   El-Saadi.

10   So if Mr. El-Saadi contributed to the joint

11   fundraising committee which then maxed him out to the

12   national party -- and the national party limit is like

13   33-7 or something to that effect.  And then he went to try

14   to contribute directly to the national party, the national

15   party would not accept that because that contribution that

16   he made through the joint fundraising committee is credited

17   against his total to the national committee, if you will.

18   **THE COURT:**  Right.  I mean, I could be wrong about

19   this, but my guess or recollection is that joint fundraising

20   committees are not a creation of Congress but of FEC

21   regulation.  Do you know the answer to that?

22   **MR. MANN:**  I don't definitively know the answer to

23   that, your Honor.  That sounds right, but we're now

24   exceeding -- now we're exceeding my FECA knowledge.

25   **THE COURT:**  I'm just wondering in looking at the

1   statute whether -- nonetheless, even though FECA is

2   subject -- I mean, joint fundraising committees are subject

3   to FEC regulation.  It's still where the crime is committed,

4   if one is committed, is at the step in the process in which

5   the funds are or are not received by a political committee.

6   I mean, maybe there are contribution limits.  I'm not aware

7   off the top of my head of contribution limits that apply to

8   joint fundraising committees separate and apart from the

9   contribution limits that apply to the committees that

10  participate in a joint fundraising effort.

11          **MR. MANN:**  That is correct, your Honor.  So in

12  this case, the joint fundraising committee at issue had one

13  campaign contribution limit in, say, June of 2016.  And just

14  to tie it to the facts of this case to make it easier,

15  Mr. Khawaja had hit those campaign contribution limits to

16  the joint fundraising committee in June of 2016.  By the

17  time he went to host the event in October of 2016, there

18  were additions to the joint fundraising committee -- so

19  additional participants, which raised the joint fundraising

20  limit to that committee.  That's what allowed Mr. Khawaja to

21  make another I think it was a $130,000 contribution before

22  he again hit that maximum for he and his wife at the time of

23  the contribution here.

24          **THE COURT:**  All right.  Well, I think this has

25  helped me some in thinking this through.  I think probably

1    what I need to do in thinking this through -- and

2    Ms. Church, this may be consistent with what you were

3    suggesting, is I ought to consider your legal argument based

4    just purely on the indictment and decide that question.  And

5    it may be that there are nonetheless some factual questions

6    that if I were to conclude that as a matter of law the

7    Government still could present some set of cases to a jury

8    that would meet the venue requirements, that depending on

9    what those facts are, they may or may not be successful with

10   a jury on that.  It may depend on how I would ultimately

11   instruct the jury on it.  And it's possible that it's

12   something I would take up at a Rule 29 issue.

13          So to the extent it's a fact-intensive inquiry, it

14   may be something for trial or for post trial briefing.  But

15   to the extent that it's just this pure legal question as

16   you're framing it as a tack on the indictment, it's

17   something that I can and should decide pretrial.

18          Is that fair, Ms. Church?

19          **MS. CHURCH:**  Yes, your Honor.

20          **THE COURT:**  Mr. Mann, anything else you wanted to

21   add?

22          **MR. MANN:**  No, your Honor.  Thank you very much.

23          **THE COURT:**  Okay.  I'll have to give this some

24   more thought.  As soon as I come to a view myself on it, I

25   will give you an opinion on it and let you know.

1          Anything else from anyone today?  All right, well

2    thank you all.  I look forward to seeing your joint status

3    report, and I'll set a further schedule based on that.  And

4    in that, I think you might consider, given the length of

5    time between now and trial, probably proposing some dates

6    for at least one or two additional status conferences just

7    so I can stay on top of the process and make sure that

8    discovery is going as it should be proceeding, and just

9    keeping us all on track.

10          Well, thank you.

11          **MR. MANN:**  This is James Mann, your Honor.  Thank

12    you.

13          **THE COURT:**  Thank you, have a good afternoon

14    everyone.

15       (Proceedings adjourned at 12:27 p.m.)

16

17

18

19

20

21

22

23

24

25

1                          **C E R T I F I C A T E**

2

3                  I, **Jeff Hook, Official Court Reporter**,

4      certify that the foregoing is a true and correct transcript

5      of the remotely reported proceedings in the above-entitled

6      matter.

7                          **PLEASE NOTE:**  This hearing occurred during

8      the COVID-19 pandemic and is therefore subject to the

9      technological limitations of court reporting remotely.

10

11

12

13      ____June 23, 2021____                    _____

14              **DATE**                               **Jeff M. Hook**

15

16

17

18

19

20

21

22

23

24

25

**$**

$130,000 [1]   34/21
$150,000 [3]   16/6
18/7 25/5
$2,700 [7]   18/19
26/1 26/4 26/5 27/1
27/1 29/15
$25 [1]   17/22
$3,000 [2]   29/14
29/23
$5,400 [1]   26/14
$75,000 [1]   18/4

**–**

-AND [1]   2/4

**1**

1020 [1]   2/3
107 [1]   2/10
10880 [1]   2/3
1099 [1]   1/17
11:00 a.m [3]   12/7
13/2 13/22
11:35 [1]   1/6
12 [2]   6/6 17/23
1200 [1]   1/21
12:27 p.m [1]   36/15
1400 [1]   1/14
14th [1]   1/17
1701 [1]   2/6
19 [1]   37/8
19-374 [1]   3/2
19th [3]   1/21 12/23
13/9
1:19-cr-374 [1]   1/4

**2**

200 [1]   2/6
20001 [2]   2/14 2/25
20005 [2]   1/15 1/18
20006 [1]   2/7
20036 [1]   1/21
20118 [1]   2/10
2016 [3]   34/13
34/16 34/17
2020 [1]   1/5
2021 [4]   9/14 9/15
10/2 13/22
22nd [6]   13/1 13/2
13/12 13/13 13/20
13/22
25 [1]   2/9
29 [7]   20/1 20/8
20/15 21/21 22/1
22/8 35/12
29'ed [1]   21/22

**3**

300 [2]   1/21 1/24
30122 [1]   25/15
33-7 or [1]   33/13
333 [1]   2/24
37-5 [2]   27/3 27/6
374 [2]   1/4 3/2

**4**

4700-C [1]   2/24

**5**

5.1 [1]   6/16

**500 [1]   2/13**
5350 [1]   1/24

**6**

60654 [1]   1/24
6th [9]   5/21 8/16
8/21 9/8 9/10 9/14
9/15 9/21 10/2

**7**

75 [1]   31/23

**8**

8th [2]   1/18 11/23

**9**

90024 [1]   2/3
901 [1]   2/13
9th [1]   12/6

**A**

a.m [4]   1/6 12/7
13/2 13/22
able [8]   14/2 14/3
15/3 21/23 24/8
26/11 26/13 27/2
above [1]   37/5
above-entitled [1]
37/5
absolutely [1]
14/20
absorbed [1]   18/25
accept [15]   16/9
18/3 26/10 27/1
27/2 27/14 27/18
27/25 28/8 28/9
28/11 30/1 32/16
32/23 33/15
accepted [4]   27/13
29/6 30/10 30/13
accepting [3]   25/22
31/6 32/2
accepts [5]   16/21
16/22 31/12 32/10
32/14
accidentally [1]
27/21
according [3]   16/23
16/23 17/5
account [1]   31/17
accounts [1]   31/11
acknowledge [1]
6/22
acquit [1]   22/23
act [9]   6/12 6/13
7/19 7/24 8/3 8/16
8/23 9/3 9/16
action [3]   1/3 3/2
21/20
actual [4]   25/10
25/20 30/4 32/20
actually [9]   11/7
19/15 20/5 22/22
30/8 30/13 32/5
32/13 32/19
add [5]   22/11 22/22
23/10 23/21 35/21
add anything [1]
23/10
addition [1]   9/21

**additional [8]   9/24**
10/4 10/8 10/11
10/18 15/21 34/19
36/6
additions [1]   34/18
adds [1]   23/9
adjourned [1]   36/15
administrative [1]
31/2
admonition [1]   6/11
affect [3]   17/10
20/4 25/9
afternoon [1]   36/13
again [2]   23/1
34/22
against [2]   20/24
33/17
agree [6]   7/16 8/12
8/20 9/1 9/7 23/2
agreement [8]   16/3
16/11 18/9 23/4
23/7 23/7 23/19
24/8
agreements [1]   25/8
agrees [2]   8/22
9/20
ahead [3]   9/13 11/1
19/14
AHMAD [1]   1/6
al [1]   1/6
alleged [4]   22/17
22/18 28/19 28/21
allegedly [2]   26/17
26/18
ALLEN [4]   2/12 2/12
4/10 13/23
allowable [1]   25/2
allowed [6]   16/9
16/19 18/2 18/3
27/22 34/20
allowing [1]   27/11
almost [2]   22/15
22/16
along [1]   31/7
alter [1]   24/12
alternative [1]
15/24
although [2]   19/12
22/13
always [2]   22/15
22/16
amenable [3]   8/15
9/20 11/18
AMERICA [2]   1/3 3/3
amongst [2]   11/9
17/4
amount [2]   16/6
32/2 32/25
And I [1]   16/12
Angeles [1]   2/3
apart [1]   34/8
apologize [3]   8/7
10/24 12/16
appear [3]   14/3
14/23 15/4
appearance [1]   5/10
appearances [3]
1/11 2/1 15/16
appearing [5]   3/5
3/6 3/7 3/17 4/11

**applies [1]   7/19**
apply [4]   26/22
30/16 34/7 34/9
appropriate [2]
4/22 10/1
arguably [2]   23/11
27/11
argument [4]   15/22
15/24 30/11 35/3
arguments [1]   24/23
arrangement [4]
16/10 18/2 26/21
28/4
array [2]   18/16
21/7
assume [2]   17/23
20/6
assuming [3]   14/1
16/6 25/3
attempt [1]   30/4
attempted [2]   30/12
32/18
available [4]   5/16
5/23 12/25 13/2
Ave [1]   2/13
Avenue [3]   1/14 2/6
2/24
aware [1]   34/6
awful [1]   19/17

**B**

back [5]   26/4 27/22
29/23 29/24 30/25
Bankruptcy [1]   2/23
bar [1]   6/20
base [1]   5/24
based [7]   16/19
17/19 21/19 24/3
29/20 35/3 36/3
basis [3]   19/24
20/20 23/9
beginning [1]   6/6
behalf [7]   3/16
3/21 4/11 7/15
15/12 16/22 24/1
beneath [1]   17/15
best [1]   9/18
beyond [2]   22/11
27/15
big [2]   22/2 31/4
Blvd [1]   2/3
both [2]   9/7 33/8
Boulos [6]   1/20 3/3
3/18 3/19 3/21 8/3
Box [1]   2/9
Brady [2]   6/15 6/24
BRAUN [9]   2/2 2/2
3/8 3/24 8/8 8/11
10/13 12/18 13/14
brief [1]   15/23
briefed [1]   5/13
briefing [3]   24/3
24/12 35/14
briefs [1]   21/4
bring [4]   19/16
20/16 20/25 21/24
BRODNAX [6]   2/5 2/6
7/7 8/6 8/8 10/13
bunch [1]   31/15
bundled [1]   31/16

**B**

burdens [1]   9/24

**C**

CA [1]   2/3
calculating [1]
22/13
calendar [1]   5/21
California [3]   14/3
15/2 28/21
call [4]   5/14 7/3
8/9 15/14
campaign [15]   16/1
16/2 17/9 17/13
18/18 18/24 18/25
26/25 29/4 29/14
29/20 30/1 32/20
34/13 34/15
can [12]   3/13 4/19
6/22 11/24 12/6
14/11 15/19 15/20
30/11 33/2 35/17
36/7
candidate [4]   18/19
31/17 32/5 32/8
candidate's [6]
26/1 26/2 26/5
26/25 27/7 29/20
capped [1]   18/19
caps [1]   18/21
case [19]   7/20 9/22
11/8 11/23 14/15
19/16 20/2 20/5
20/6 21/3 23/6
23/13 26/17 29/8
29/10 29/12 33/5
34/12 34/14
cases [1]   35/7
certainly [8]   9/11
21/10 24/5 24/7
24/10 29/2 31/9
31/22
certify [1]   37/4
chain [2]   21/2 24/6
change [2]   5/22
14/22
changed [1]   5/11
channeling [1]
25/24
charge [3]   19/14
22/23 23/9
charged [3]   20/24
23/14 24/21
charges [5]   6/19
20/16 20/23 20/25
21/24
check [11]   17/22
29/13 29/16 31/23
32/2 32/9 32/11
32/15 32/16 32/17
32/23
checks [4]   29/19
29/22 31/7 31/15
Chicago [1]   1/24
choose [1]   21/5
CHURCH [15]   1/23
3/8 4/3 8/18 8/19
10/15 12/20 13/10
13/16 15/11 23/25

24/1 28/1 35/2
35/18
circumstance [1]
26/23
circumstances [2]
6/21 9/11
claim [3]   22/15
22/21 22/24
clarity [1]   24/5
clear [4]   4/21
22/10 22/20 29/12
clearly [1]   4/19
clients [1]   15/15
close [1]   11/25
COLUMBIA [3]   1/1
28/20 29/2
commit [1]   32/18
committed [3]   32/13
34/3 34/4
committee [81]
committee's [1]
27/19
committees [23]
16/12 16/20 17/15
17/24 18/1 18/13
18/14 18/15 18/16
18/21 18/24 25/6
25/24 26/24 30/19
30/21 32/4 32/5
32/22 33/20 34/2
34/8 34/9
communicated [2]
5/16 5/18
complicated [1]
9/21
comply [2]   6/17
6/17
component [1]   29/4
conceptually [1]
31/4
concern [1]   23/16
conclude [6]   4/21
9/22 12/23 18/4
22/8 35/6
concludes [2]   9/17
10/1
conduct [6]   25/10
28/18 28/20 28/21
28/22 28/24
conduit [19]   20/25
22/15 22/18 22/21
22/21 22/24 23/5
23/18 24/22 25/17
25/18 25/19 26/6
26/12 26/20 27/9
27/24 28/18 30/8
confer [4]   11/5
11/9 11/16 15/15
conference [7]   1/9
4/22 11/24 12/6
13/22 14/5 15/17
conferences [1]
36/6
conferred [3]   7/18
8/3 8/21
confusing [1]   8/7
Congress [1]   33/20
consent [1]   14/16
consents [9]   3/12
3/14 3/17 3/21 3/25

4/4 4/7 4/11 9/2
consider [3]   28/23
35/3 36/4
considerably [1]
27/5
consideration [2]
28/17 29/7
considerations [1]
29/3
considered [1]
30/14
consistent [1]   35/2
conspiracy [12]
19/13 19/19 20/23
22/12 22/16 22/17
22/17 22/20 22/23
23/4 23/19 32/18
Constitution [1]
2/24
consult [1]   15/3
contemplation [1]
24/22
contest [1]   6/3
contingent [2]
26/15 27/17
continuance [1]
9/17
continuances [1]
6/20
CONTINUED [1]   2/1
continuing [1]   6/3
contribute [4]   26/2
26/13 27/21 33/14
contributed [2]
26/1 33/10
contributes [1]
27/9
contribution [61]
contributions [12]
18/3 18/7 25/23
25/24 30/14 30/16
30/18 31/12 32/6
32/12 32/13 33/5
contributor [1]
25/20
convene [2]   4/25
14/2
convenience [2]
16/12 31/3
convict [1]   22/19
conviction [1]
22/13
convinced [1]   23/18
corporation [3]
32/7 32/11 32/24
correctly [1]   30/17
counsel [16]   3/13
3/15 3/18 3/23 4/1
4/5 4/8 5/5 5/6 5/7
5/18 6/14 7/10 8/8
10/3 11/16
counsel's [1]   15/14
count [5]   19/13
19/14 19/19 19/19
24/23
country [1]   4/24
counts [4]   19/11
20/21 22/11 22/20
couple [2]   5/3
15/20

course [2]   15/2
21/20
court [16]   1/1 2/22
2/23 5/17 7/4 8/11
9/16 10/1 11/6
11/10 11/22 19/7
19/9 19/23 37/3
37/9
Court's [2]   4/14
25/3
courthouse [1]   4/25
courtroom [1]   12/3
Courts [1]   2/23
COVID [1]   37/8
COVID-19 [1]   37/8
Cozen [1]   1/20
cr [1]   1/4
cracks [1]   29/16
created [1]   30/18
creation [1]   33/20
credited [1]   33/16
crime [6]   32/13
32/15 32/16 32/18
32/18 34/3
criminal [5]   1/3
1/14 3/2 6/16 32/3
current [1]   9/11

**D**

D.C [15]   16/1 16/4
16/7 17/9 17/19
18/5 18/8 18/17
20/24 28/7 28/22
28/24 29/9 29/21
29/21
DALE [8]   2/12 2/12
3/9 4/10 9/5 10/20
13/19 13/23
dangerous [2]   21/9
21/20
date [15]   5/17 5/19
5/22 5/24 5/24 6/7
8/16 8/21 9/8 11/20
11/25 12/4 12/17
12/24 37/14
dates [2]   5/17 36/5
DC [7]   1/5 1/15
1/18 1/21 2/7 2/14
2/25
deadlines [1]   11/4
dearth [1]   21/3
December [10]   1/5
5/21 8/16 8/21 9/8
9/10 9/14 9/15 9/21
10/2
December 6th [8]
5/21 8/16 9/8 9/10
9/14 9/15 9/21 10/2
decide [12]   19/8
19/9 19/15 19/24
20/14 20/14 20/19
20/22 21/11 21/14
35/4 35/17
decided [1]   20/4
decides [1]   22/4
decision [4]   21/18
21/19 22/5 22/6
deemed [1]   21/24
defendant [7]   1/16
1/20 1/23 2/2 2/8

## D

defendant... [2]
  2/12 14/3
defendants [10]   1/7
  3/5 3/7 4/23 5/15
  5/19 9/19 14/2
  20/22 20/24
defense [2]   7/10
  10/3
definition [1]   17/3
definitively [1]
  33/22
Department [1]   1/13
depend [1]   35/10
depending [2]   24/16
  35/8
deposited [1]   31/16
deputy [2]   5/16
  12/3
determinations [1]
  31/13
Diab [6]   2/2 3/4
  3/23 3/24 8/7 8/13
difference [10]
  19/21 22/12 22/14
  23/3 24/16 24/18
  24/20 25/14 28/6
  31/5
Dillon [1]   1/17
direct [1]   16/15
directly [2]   15/25
  33/14
discipline [1]   6/20
disclosure [1]   6/15
discovery [6]   5/13
  6/10 9/7 9/22 24/10
  36/8
discussed [2]   8/13
  9/2
dismissal [2]   6/18
  6/19
dismissed [1]   24/24
distinct [2]   31/14
  31/15
distribute [1]
  16/10
distributed [4]
  17/8 18/23 28/5
  31/14
distributes [1]
  17/17
DISTRICT [7]   1/1
  1/1 1/10 2/23 12/22
  28/20 29/2
divides [2]   16/23
  17/4
Division [1]   1/14
dollars [1]   17/23
done [1]   5/15
doubt [1]   22/14
doubtful [1]   22/24
down [2]   9/13 13/22
due [3]   5/14 6/12
  6/13
during [1]   37/7

## E

earlier [1]   21/13
early [1]   5/10

easier [1]   34/14
EDWARD [6]   2/8 2/9
  3/8 4/6 8/25 15/1
effect [9]   25/17
  25/19 26/12 26/18
  27/12 27/19 28/14
  30/13 33/13
effected [6]   26/6
  26/7 28/18 30/9
  30/10 30/23
effecting [5]   26/9
  26/14 26/15 27/17
  28/12
effects [1]   27/23
effort [1]   34/10
either [6]   7/3 8/8
  20/6 23/23 26/16
  32/11
El [21]   1/23 3/4
  4/2 4/4 5/4 5/12
  8/20 8/22 10/5
  15/12 15/21 15/23
  20/20 23/6 24/2
  25/4 25/9 28/19
  28/23 33/9 33/10
El-Saadi [5]   1/23
  3/4 15/12 24/2 33/9
else [9]   5/5 7/10
  10/21 19/15 19/17
  23/20 26/3 35/20
  36/1
else's [2]   25/18
  27/24
EMILY [3]   1/16 3/7
  3/16
end [1]   22/1
endeavor [1]   18/10
ends [1]   9/15
enough [3]   21/19
  22/4 22/7
entire [1]   19/16
entities [6]   16/22
  17/5 17/17 25/8
  30/23 33/7
entitled [2]   18/6
  37/5
entity [5]   16/21
  17/19 25/8 32/7
  33/3
envelope [2]   29/19
  29/22
especially [1]   14/3
essence [1]   26/16
essentially [1]
  25/1
established [1]
  17/14
et [1]   1/6
even [4]   15/25
  21/15 22/7 34/1
event [2]   4/25
  34/17
eventually [1]   18/5
everybody [2]   4/14
  9/25
everyone [1]   11/15
  3/14 4/17 9/20 12/8
  36/14
evidence [5]   6/20
  20/1 20/13 20/13

23/17
evidentiary [2]
  21/16 23/9
example [6]   18/3
  19/10 22/19 24/15
  26/20 27/21
exceed [3]   16/8
  17/2 25/20
exceeded [1]   29/5
exceeding [2]   33/24
  33/24
exception [1]   9/16
excess [5]   27/10
  28/14 29/15 30/2
  32/24
exclusion [2]   6/19
  8/22
execution [1]   30/5
expect [2]   12/23
  15/18
expected [1]   6/5
extent [4]   20/11
  31/10 35/13 35/15
extradition [2]   6/3
  6/8

## F

fact [6]   4/23 19/17
  26/9 31/9 31/11
  35/13
fact-intensive [2]
  31/9 35/13
facts [9]   21/11
  21/14 21/19 22/4
  24/11 24/15 31/10
  34/14 35/9
factual [3]   20/12
  21/13 35/5
failure [1]   6/17
fair [2]   22/7 35/18
fairly [1]   29/12
far [2]   6/2 29/11
FEC [3]   30/25 33/20
  34/3
FECA [12]   18/10
  25/22 25/24 30/21
  30/21 31/4 32/3
  32/21 33/4 33/5
  33/24 34/1
feedback [1]   4/18
figure [1]   30/7
file [4]   11/21 15/4
  15/7 15/15
filed [1]   5/12
finance [1]   18/24
find [1]   23/5
finds [1]   26/3
fine [2]   13/18 15/8
first [3]   9/19
  11/17 24/21
Floor [1]   1/18
flow [2]   18/5 18/7
flowed [1]   19/1
focus [1]   28/22
For Defendant [6]
  1/16 1/20 1/23 2/2
  2/8 2/12
foregoing [1]   37/4
foreign [3]   32/7
  32/12 32/24

foremost [1]   24/21
foreseeable [1]
  25/4
formal [1]   6/8
formed [1]   25/23
forth [1]   6/16
forward [5]   21/17
  22/5 24/9 24/13
  36/2
found [1]   23/3
framing [1]   35/16
fully [1]   5/12
fundraiser [4]
  29/17 29/18 31/6
  31/15
fundraising [46]
  16/4
  16/11 17/8 18/4
  28/5 29/7 31/13
  32/19 34/5
funneling [1]   30/18
further [4]   4/13
  6/4 11/22 36/3

## G

George [2]   3/3 3/9
gets [1]   27/9
given [8]   4/23 9/11
  18/15 19/17 21/2
  22/14 23/12 36/4
gives [1]   29/16
goes [3]   29/11
  29/22 29/22
good [6]   3/10 4/7
  4/8 4/10 7/6 36/13
gotta [1]   29/23
government [32]
  1/12 3/6 5/10 5/15
  6/14 6/19 6/23 6/25
  7/16 8/2 8/10 8/13
  10/23 10/24 14/8
  16/18 20/4 20/10
  20/13 20/15 20/22
  21/4 21/6 21/9
  21/20 22/1 22/3
  22/3 23/2 23/14
  24/5 35/7
Government's [5]
  8/20 9/1 20/2 20/11
  22/22
grant [1]   14/21
great [1]   8/5
guess [12]   5/2 6/1
  8/8 12/24 18/12
  19/6 21/22 23/14
  30/6 30/7 31/24
  33/19
guidelines [1]
  23/12
guilty [1]   21/21

## H

half [1]   17/23
hand [1]   18/6
handset [1]   4/19
hang [1]   23/4
happens [2]   17/16
  27/20
happy [2]   5/5 15/21
hard [2]   30/9 30/12

**H**

HARLAND [4]   2/2 2/2
3/8 3/24
head [3]   11/16 27/2
34/7
hear [5]   4/19 7/10
8/10 14/11 15/21
heard [1]   7/2
hearing [2]   21/16
37/7
hearings [1]   14/15
helped [1]   34/25
helpful [2]   19/4
33/2
helping [1]   31/25
here's [2]   25/13
29/23
hereby [1]   6/14
higher [1]   27/5
Hill [7]   2/8 3/4
4/5 4/7 9/1 9/2
15/2
hit [2]   34/15 34/22
hold [1]   12/5
holiday [1]   12/1
Honor [88]
Honor's [4]   11/18
20/17 21/18 29/3
HONORABLE [1]   1/9
HOOK [3]   2/22 37/3
37/14
hopefully [1]   14/1
hoping [1]   29/15
host [1]   34/17
hosting [3]   29/17
29/18 31/6
hundred [1]   19/18
hung [2]   23/6 23/19

**I**

identical [1]   20/6
III [2]   2/5 2/6
IL [1]   1/24
illegal [5]   26/14
28/18 32/1 32/6
32/7
Illinois [1]   12/22
imagine [2]   27/6
30/11
immediately [1]
28/10
important [1]   31/18
improper [1]   24/22
inchoate [1]   32/17
inclined [1]   19/13
incorrect [1]   28/13
increase [1]   23/11
indexed [1]   27/4
indictment [4]   6/18
19/24 35/4 35/16
individual [9]   6/19
18/21 19/11 19/14
20/21 20/25 32/12
32/16 32/24
inflation [1]   27/4
information [1]
6/18
inquiry [2]   31/9
35/13

inserting [1]   25/17
instance [1]   24/20
instruct [1]   35/11
intake [1]   29/21
intensive [2]   31/9
35/13
interests [3]   9/17
9/18 9/18
interim [2]   28/25
31/18
into [3]   4/18 31/12
31/16
introduce [1]   4/20
involve [1]   26/21
involved [1]   23/8
involving [1]   19/11
issue [9]   6/1 11/3
11/8 15/25 17/11
19/23 21/3 34/12
35/12
issues [4]   10/4
10/8 10/11 10/18
issuing [1]   24/4

**J**

JAMES [10]   1/12 3/6
5/9 11/2 16/13
16/17 20/9 23/1
33/1 36/11
January [1]   11/23
January 8th [1]
11/23
JEFF [3]   2/22 37/3
37/14
joined [2]   7/8 8/9
joining [1]   7/3
joint [48]
JR [2]   2/8 2/9
JUDGE [2]   1/10 7/5
34/16
juries [1]   23/4
jury [7]   22/8 22/19
22/23 23/17 35/7
35/10 35/11
justice [3]   1/13
9/16 9/18

**K**

Kaiser [1]   1/17
KAREN [3]   1/20 3/8
3/20
keeping [1]   36/9
KHAWAJA [4]   1/6 6/2
34/15 34/20
kick [1]   32/4
kicked [1]   28/10
kicks [1]   32/3
knowing [2]   29/14
29/14
knowingly [1]   25/16
knowledge [1]   33/24
Kristin [1]   13/2

**L**

L/O [2]   2/6 2/12
largely [1]   23/2
largest [1]   18/17
LaSalle [1]   1/24
last [3]   5/10 5/14

6/6
law [5]   21/3 29/8
29/10 29/12 35/6
lawfully [3]   18/23
19/1 26/3
least [1]   36/6
leave [1]   15/4
leaving [1]   7/3
legal [2]   35/3
35/15
length [1]   36/4
lie [2]   20/19 20/25
light [1]   9/23
limine [2]   11/4
11/11
limit [8]   16/8
27/15 28/15 29/15
30/2 33/12 34/13
34/20
limitations [3]
30/21 32/4 37/9
limits [9]   17/10
17/13 25/20 30/15
31/4 34/6 34/7 34/9
34/15
line [2]   7/4 8/14
Lithuania [1]   6/3
local [1]   6/16
located [5]   4/23
16/1 16/7 28/7
29/20
long [2]   6/5 15/7
look [3]   25/14
30/25 36/2
looking [2]   31/19
33/25
Los [1]   2/3
lot [1]   19/17

**M**

MACMAHON [9]   2/8
2/9 3/8 4/6 8/24
8/25 10/17 13/17
15/2
mails [2]   29/19
29/24
makes [6]   11/9
15/24 22/12 25/14
31/12 31/14
making [5]   25/4
25/5 25/7 31/20
31/21
MANN [21]   1/12 3/6
5/8 5/9 6/22 7/10
11/2 11/14 12/9
12/10 13/4 16/13
16/16 16/17 20/10
23/1 25/21 29/11
33/1 35/20 36/11
many [2]   18/14
18/14
Maryland [1]   6/15
material [1]   19/21
materials [1]   24/11
matter [8]   5/11
9/13 21/14 24/2
24/15 31/10 35/6
37/6
matters [2]   11/23
21/1

max [2]   17/1 17/2
maxed [4]   26/11
27/7 28/11 33/11
maximum [3]   16/19
23/11 34/22
may [18]   5/22 8/11
12/3 12/14 20/22
21/2 22/1 23/5
23/17 23/18 24/7
28/5 35/2 35/5 35/9
35/9 35/10 35/14
maybe [6]   12/1 12/3
22/12 31/22 31/22
34/6
mean [14]   11/19
17/21 23/10 27/20
29/11 29/13 30/15
30/24 30/24 31/24
33/2 33/18 34/2
34/6
means [1]   23/7
meet [2]   11/5 35/8
MEGAN [7]   1/23 3/8
4/3 8/19 13/10
15/11 24/1
MICHAEL [2]   1/13
3/7
microphone [1]   4/17
Middleburg [1]   2/10
might [8]   17/10
17/23 19/4 19/15
21/4 26/22 30/11
36/4
mind [1]   14/23
missing [1]   22/25
Mohammad [1]   3/4
MoloLamken [1]   1/23
moment [2]   5/1 12/6
money [6]   16/21
16/22 17/4 17/17
19/1 19/1
months [1]   6/6
more [8]   18/7 19/6
21/11 26/2 27/9
27/21 30/4 35/24
morning [5]   3/10
4/7 4/8 4/10 7/6
MOSS [1]   1/9
most [2]   21/9 21/20
motion [7]   5/4 10/5
15/21 20/1 20/8
22/6 23/21
motions [4]   5/12
11/4 11/11 11/12
move [3]   21/17 22/5
24/13
Mr. [72]
Mr. Boulos [4]   3/18
3/19 3/21 8/3
Mr. Braun [5]   8/8
8/11 10/13 12/18
13/14
Mr. Brodnax [3]   8/6
8/8 10/13
Mr. Dale [3]   9/5
10/20 13/19
Mr. Diab [4]   3/23
3/24 8/7 8/13
Mr. El-Saadi [11]
4/2 4/4 5/12 8/20

**M**

Mr. El-Saadi... [7]
8/22 15/23 20/20
23/6 25/4 28/19
33/10
Mr. El-Saadi's [5]
5/4 10/5 15/21 25/9
28/23
Mr. Hill [5]   4/5
4/7 9/1 9/2 15/2
Mr. Khawaja [3]   6/2
34/15 34/20
Mr. MacMahon [3]
8/24 10/17 13/17
Mr. Mann [11]   5/8
6/22 7/10 11/14
12/9 12/10 13/4
16/16 25/21 29/11
35/20
Mr. Nader [5]   3/15
3/17 3/17 7/16 7/19
Mr. Romano [1]   5/8
Mr. Shur [1]   8/6
Mr. Whipple [8]   4/9
4/11 9/7 9/8 14/10
14/11 14/13 14/22
Ms. [17]   7/13 7/25
10/7 10/10 10/15
12/12 12/14 12/15
12/20 13/6 13/8
13/11 13/16 23/25
28/1 35/2 35/18
Ms. Church [7]
10/15 12/20 13/16
23/25 28/1 35/2
35/18
Ms. Voshell [4]
7/13 10/7 12/12
13/6
Ms. Williams [6]
7/25 10/10 12/14
12/15 13/8 13/11
much [8]   5/11 19/21
22/11 22/14 22/24
23/24 29/23 35/22
multiple [2]   16/22
17/5
mute [2]   4/17 12/14
myself [1]   35/24

**N**

Nader [7]   1/16 3/3
3/15 3/17 3/17 7/16
7/19
name [7]   4/20 25/16
25/19 27/12 27/24
28/13 33/8
national [14]   18/18
18/20 19/2 25/1
25/11 27/2 27/8
27/13 27/14 33/12
33/12 33/14 33/14
33/17
nature [1]   22/14
necessarily [1]
25/5
necessary [5]   9/23
16/10 21/11 25/2
29/3

need [2]   25/14 35/1
needed [1]   21/14
needs [1]   19/23
Nevada [4]   28/22
29/16 29/17 29/18
New [2]   1/14 2/13
news [1]   6/4
next [1]   12/1
nobody [1]   4/16
None [2]   10/14
10/16
nonetheless [2]
34/1 35/5
nor [1]   23/10
Northern [1]   12/22
NOTE [1]   37/7
November [5]   6/7
12/1 12/6 12/23
13/22
November 19th [1]
12/23
November 22nd [1]
13/22
November 9th [1]
12/6
NW [6]   1/14 1/17
1/21 2/6 2/13 2/24

**O**

O'Connor [1]   1/20
objection [7]   7/24
8/2 8/4 9/10 14/7
14/8 24/7
obligations [2]
6/15 6/23
obstruction [1]
20/23
occurred [5]   15/5
28/20 28/21 29/25
37/7
October [2]   5/11
34/17
off [4]   5/25 11/15
27/1 34/7
offer [1]   15/22
Official [2]   2/23
37/3
once [2]   10/6 33/6
one [19]   10/24 11/8
11/15 12/5 15/22
18/4 18/6 21/12
24/23 25/10 27/3
27/23 29/23 30/23
31/18 31/21 34/4
34/12 36/6
only [4]   6/1 18/13
23/3 26/18
Oops [1]   29/22
opens [1]   29/21
opinion [2]   20/17
35/25
opportunity [2]
6/11 15/14
options [1]   21/8
order [6]   3/13 4/16
11/3 16/10 17/9
25/2
ordered [1]   6/14
ordinarily [1]
26/10

original [1]   25/9
otherwise [4]   20/1
27/12 27/14 29/5
ought [1]   35/3
out [10]   5/14 15/2
18/19 24/12 26/11
27/7 28/10 28/11
30/7 33/11
outlined [2]   8/2
24/16
outside [4]   16/7
28/20 28/24 29/9
outstanding [1]   6/1
outweigh [1]   9/18
overarching [1]
31/21
overlap [2]   19/18
19/18
own [1]   31/11

**P**

p.m [1]   36/15
package [1]   6/8
pandemic [5]   5/1
9/11 9/24 9/24 37/8
part [3]   17/19
18/15 23/4
participants [2]
18/9 34/19
participate [2]
14/19 34/10
participated [1]
18/1
participating [3]
15/19 16/20 17/24
particular [1]
24/20
particularly [3]
9/23 15/23 31/19
parties [5]   5/2
11/5 11/9 11/21
27/2
parties' [3]   21/4
24/3 24/12
parts [1]   4/24
party [7]   16/2
18/15 18/18 33/12
33/12 33/14 33/15
passing [1]   31/7
pay [3]   26/4 27/8
27/9
payment [4]   25/1
25/7 25/11 29/1
payments [1]   25/6
pending [2]   5/4
23/21
Penn [1]   2/6
people [1]   27/21
per [1]   17/1
percent [1]   19/18
perhaps [4]   19/18
26/16 30/12 32/17
period [1]   9/22
permissible [1]
4/15
permit [1]   25/16
permitted [5]   17/5
20/16 27/12 29/6
31/2
person [14]   14/2

14/19 14/23 25/16
25/25 26/3 26/6
26/6 26/11 27/9
27/11 29/17 29/21
29/24
person's [1]   28/11
perspective [2]
20/2 22/22
phone [8]   3/6 3/17
3/22 4/4 4/12 14/4
14/17 21/23
physical [2]   15/16
15/18
physically [1]
14/14
piece [1]   23/23
placing [1]   9/25
Plaintiff [1]   1/4
plan [1]   8/2
plans [1]   9/1
PLC [1]   2/9
PLEASANT [3]   2/5
2/6 7/7
please [2]   13/25
37/7
PLLC [2]   1/17 2/12
PO [1]   2/9
point [9]   14/22
19/5 21/25 22/4
27/3 29/25 30/6
32/14 32/19
political [5]   25/24
32/4 32/8 32/20
34/5
posing [2]   19/22
22/9
possible [3]   12/24
22/8 35/11
possibly [1]   19/15
post [1]   35/14
potential [1]   5/17
potentially [1]
25/13
practical [1]   19/6
prefer [3]   14/23
20/13 22/3
preference [4]
14/18 19/7 20/11
24/6
preparation [1]
9/23
presence [1]   15/18
present [4]   14/14
21/15 27/5 35/7
presentation [1]
23/17
presumably [1]
28/21
pretrial [8]   11/24
12/6 13/21 14/5
14/6 15/6 15/17
35/17
pretty [1]   11/25
principle [1]   26/22
probably [6]   11/8
11/17 27/4 29/11
34/25 36/5
proceed [4]   4/22
8/11 20/23 24/4
proceeding [5]   3/12

**P**

proceeding... **[4]**
3/22 4/4 7/16 36/8
proceedings **[4]**
4/16 14/15 36/15
37/5
proceeds **[1]** 20/5
process **[5]** 6/10
6/12 6/13 34/4 36/7
progeny **[1]** 6/16
proof **[2]** 20/5
24/17
proper **[1]** 21/25
proposal **[2]** 8/20
11/11
propose **[3]** 11/6
11/13 11/19
proposing **[1]** 36/5
Protection **[2]** 6/12
6/13
provide **[2]** 11/21
15/13
provided **[1]** 6/5
provides **[1]** 25/15
provisions **[1]** 6/17
public **[1]** 9/19
pure **[1]** 35/15
purely **[1]** 35/4
purposes **[6]** 15/16
25/22 25/23 27/5
30/7 30/18
Pursuant **[1]** 6/13
put **[5]** 6/11 9/13
13/21 26/8 29/12
puts **[1]** 29/19

**Q**

quickly **[1]** 3/13
quite **[2]** 17/21
29/11

**R**

raise **[4]** 5/5 5/6
10/4 18/2
raised **[2]** 21/12
34/19
RANDOLPH **[1]** 1/9
Rani **[4]** 3/4 15/12
24/2 33/8
rather **[1]** 14/19
really **[7]** 16/21
20/3 25/8 28/17
30/14 30/20 31/1
reason **[8]** 19/22
20/18 22/9 23/13
23/15 24/21 25/18
27/16
reasons **[2]** 9/25
24/13
rebroadcast **[1]**
4/15
recall **[1]** 27/1
receive **[2]** 17/6
18/7
received **[5]** 5/16
9/6 30/22 33/8 34/5
receives **[2]** 17/4
17/17
receiving **[1]** 32/5

recipient **[1]** 18/17
recognized **[1]** 21/4
recognizing **[1]**
5/22
recollection **[1]**
33/19
recommendation **[1]**
5/20
record **[6]** 4/15
4/21 6/11 6/23
15/16 20/12
referenced **[2]** 5/12
5/13
refused **[1]** 30/1
register **[1]** 33/3
regulation **[2]**
33/21 34/3
regulations **[1]**
30/25
rehashing **[1]** 21/13
remaining **[2]** 20/21
28/23
remains **[1]** 6/2
remedy **[2]** 6/21
21/25
remind **[1]** 4/14
remotely **[2]** 37/5
37/9
removed **[1]** 25/10
reply **[1]** 15/23
report **[4]** 11/10
11/20 11/22 36/3
reported **[3]** 33/5
33/8 37/5
reporter **[4]** 2/22
2/23 7/4 37/3
reporting **[1]** 37/9
request **[2]** 14/21
15/12
require **[1]** 20/12
required **[4]** 6/11
18/10 33/3 33/4
requirements **[1]**
35/8
reserve **[3]** 5/20
20/7 21/21
reserved **[1]** 19/25
resolution **[1]** 24/3
respect **[20]** 5/18
5/19 6/4 6/9 8/6
11/4 11/22 15/24
17/10 19/10 19/13
19/19 20/10 20/20
20/21 23/21 24/17
24/25 28/5 28/19
restrictions **[1]**
30/15
result **[1]** 6/18
review **[2]** 6/14
21/1
right **[17]** 4/5 7/13
7/18 8/5 9/4 10/13
10/22 14/14 15/20
23/25 30/6 30/6
30/25 33/18 33/23
34/24 36/1
ripe **[1]** 24/2
risk **[2]** 21/21 22/2
ROMANO **[3]** 1/13 3/7
5/8

Room **[1]** 2/24
Roy **[1]** 3/3
rule **[9]** 6/16 20/1
20/8 20/15 21/21
21/22 22/1 22/8
35/12
rules **[1]** 4/14
ruling **[2]** 21/5
24/4
run **[2]** 3/13 10/5

**S**

Saadi **[16]** 1/23 3/4
4/2 4/4 5/12 8/20
8/22 15/12 15/23
20/20 23/6 24/2
25/4 28/19 33/9
33/10
Saadi's **[5]** 5/4
10/5 15/21 25/9
safe **[2]** 4/24 4/25
same **[4]** 15/12
20/20 26/22 31/16
satisfy **[1]** 20/16
saying **[1]** 18/12
schedule **[5]** 11/13
11/20 11/24 16/24
36/3
scheduling **[3]** 11/3
11/11 11/23
se **[1]** 17/1
second **[1]** 28/10
section **[1]** 25/15
seeing **[1]** 36/2
seem **[1]** 30/4
seems **[3]** 5/23 22/2
22/23
send **[1]** 29/23
sends **[1]** 27/22
sense **[3]** 11/9
25/22 26/7
sent **[1]** 5/14
sentences **[1]** 22/13
sentencing **[1]**
23/12
separate **[3]** 19/11
21/15 34/8
serve **[1]** 9/17
set **[5]** 5/21 6/16
24/12 35/7 36/3
setting **[1]** 9/7
sever **[1]** 19/14
severing **[1]** 19/16
shall **[2]** 6/14
11/21
share **[1]** 17/23
short **[1]** 22/8
Shur **[1]** 8/6
simpler **[1]** 26/20
simply **[2]** 16/11
19/25
single **[4]** 19/20
25/7 25/7 33/6
sit **[1]** 21/23
situation **[1]** 18/13
six **[1]** 6/6
slips **[1]** 29/15
software **[1]** 28/9
somebody **[5]** 26/3

26/13 27/7 29/17
31/6
someone **[6]** 7/3
25/18 27/24 29/13
31/20 32/9
sometime **[1]** 11/25
sometimes **[1]** 23/3
somewhere **[2]** 19/15
19/17
soon **[2]** 11/17
35/24
sorry **[5]** 7/22 8/7
12/11 16/14 27/23
sort **[4]** 16/24 17/7
31/2 31/24
sounds **[1]** 33/23
speak **[4]** 4/18 4/21
10/6 10/6
speaking **[1]** 4/17
specific **[1]** 31/17
Speedy **[8]** 7/19 8/3
8/16 8/23 9/3 9/9
9/16 9/19
spoken **[1]** 9/8
stack **[1]** 29/18
stand **[2]** 5/3 18/22
standard **[2]** 11/3
11/7
standpoint **[1]**
31/19
start **[2]** 5/6 7/14
starting **[2]** 5/21
9/14
state **[3]** 18/14
18/20 18/24
STATES **[5]** 1/1 1/3
1/10 3/3 5/7
status **[8]** 1/9 5/10
6/2 11/10 11/20
11/22 36/2 36/6
statute **[5]** 25/15
28/23 29/24 30/7
34/1
statute whether **[1]**
34/1
statutory **[3]** 23/11
29/25 32/25
stay **[2]** 17/9 36/7
step **[4]** 25/10
28/25 31/18 34/4
Stevan **[1]** 3/4
still **[9]** 7/4 7/5
12/15 12/22 15/18
28/1 28/2 34/3 35/7
Street **[4]** 1/17
1/21 1/24 2/10
strong **[1]** 20/3
subject **[5]** 30/21
31/3 34/2 34/2 37/8
submit **[2]** 11/10
11/17
subsequent **[2]**
24/25 29/1
subsequently **[1]**
31/13
subservient **[1]**
16/22
substantive **[3]**
22/11 22/21 23/8
successful **[1]** 35/9

**S**

sufficient [1]
20/12
suggested [2]   7/17
8/10
suggesting [1]   35/3
suggestion [2]   12/4
13/9
Suite [5]   1/21 1/24
2/3 2/6 2/13
supervisory [2]
21/2 24/6
support [1]   19/16
suppose [2]   22/7
32/3
sure [5]   3/11 3/14
7/4 29/10 36/7
surging [1]   5/1

**T**

tack [1]   35/16
target [1]   5/24
technological [1]
37/9
telephone [5]   3/5
4/22 14/11 14/19
15/19
TELEPHONIC [1]   1/9
telephonically [1]
3/12
terms [2]   24/11
29/3
terribly [1]   29/12
Thanksgiving [2]
12/1 12/25
Thayne [1]   3/4
therefore [5]   25/3
26/14 28/13 29/6
37/8
thinking [4]   31/1
31/25 34/25 35/1
though [3]   13/24
22/10 34/1
thought [4]   7/7
16/14 19/12 35/24
tie [1]   34/14
times [1]   33/6
today [9]   3/12 4/23
5/2 5/6 10/4 11/20
15/14 15/22 36/1
together [1]   31/16
toll [2]   9/15 10/1
tolling [4]   8/15
9/9 9/10 9/20
tone [1]   7/2
top [4]   11/15 27/1
34/7 36/7
total [1]   33/17
track [1]   36/9
transcript [2]   1/9
37/4
transferred [1]
16/3
transmission [1]
6/7
travel [1]   4/24
trial [24]   5/17
5/19 5/20 5/22 7/19
8/3 8/16 8/21 8/23

9/3 9/8 9/9 9/13
9/16 9/19 11/25
12/22 12/23 20/12
21/15 23/10 35/14
35/14 36/5
true [1]   37/4
try [1]   33/13
trying [2]   28/3
30/7
turn [2]   4/19 10/5
turns [1]   28/6
two [8]   5/20 9/14
17/24 18/1 18/13
26/24 33/5 36/6
two-week [1]   5/20

**U**

U.S [2]   1/13 2/23
ultimately [4]   24/7
25/7 31/16 35/10
under [14]   4/14
6/12 6/15 6/21 6/24
7/24 8/16 8/22 9/3
9/15 16/24 25/24
29/7 33/4
underneath [3]
17/18 18/14 18/16
understands [2]
6/23 7/1
Unfortunately [1]
12/21
UNITED [5]   1/1 1/3
1/10 3/3 5/7
unlawful [5]   25/16
26/12 26/19 29/5
32/22
unless [2]   22/25
30/24
unwitting [3]   26/17
26/18 27/18
up [9]   5/5 18/3
21/2 21/5 23/4 23/6
23/19 29/22 35/12
update [2]   5/3 6/4
upon [1]   16/20
use [2]   25/18 26/20
used [2]   25/17
28/14
using [2]   26/12
27/24

**V**

VA [1]   2/10
various [3]   4/23
18/20 31/4
varying [1]   21/7
vast [1]   18/16
venue [15]   15/24
17/10 19/10 19/12
20/16 20/18 20/19
20/20 21/5 21/14
21/19 21/25 22/9
24/24 35/8
venue-based [1]
21/19
verdict [1]   21/22
versus [2]   3/3 6/15
via [1]   4/11
video [1]   7/7
view [3]   17/10 20/3

35/24
violated [1]   29/24
violating [1]   18/23
violation [1]   29/25
virtue [2]   16/11
18/8
voluminous [1]   9/22
VOSHELL [7]   1/16
3/7 3/16 7/13 10/7
12/12 13/6

**W**

wait [1]   28/10
waiver [5]   8/4 9/2
15/5 15/8 15/16
waiving [2]   7/24
9/9
wants [1]   27/8
Washington [8]   1/5
1/15 1/18 1/21 2/7
2/10 2/14 2/25
way [10]   5/1 16/18
17/3 20/6 21/16
26/8 26/13 26/18
27/23 30/22
week [2]   5/20 12/24
weeks [1]   9/14
welcome [2]   14/22
15/17
West [2]   1/18 2/13
what's [1]   24/12
Whipple [10]   2/12
3/5 4/9 4/11 9/7
9/8 14/10 14/11
14/13 14/22
who's [11]   8/13
14/3 15/13 26/13
27/7 29/17 29/18
29/21 31/6 31/6
31/20
whole [1]   29/18
wife [1]   34/22
WILLIAMS [9]   1/20
3/8 3/21 7/25 10/10
12/14 12/15 13/8
13/11
willing [3]   27/18
28/8 28/9
Wilshire [1]   2/3
within [1]   17/9
without [2]   18/23
21/13
witnesses [1]   6/20
witting [1]   26/16
wonder [1]   28/4
wondering [2]   19/23
33/25
words [4]   16/9 19/9
32/6 32/21
work [3]   12/8 13/3
13/12
works [8]   12/17
13/13 13/15 13/16
13/20 16/19 17/4
17/19
write [2]   17/22
31/23
writes [4]   29/13
29/16 32/9 32/17
written [3]   15/5

15/7 15/15
wrong [2]   30/24
33/18

**Y**

year [3]   6/7 11/18
12/2
York [2]   1/14 2/13